UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DONNA L. HUFFMAN,

    Plaintiff,

v.

FOREST RIVER, INC.,

    Defendant.

Case No. 23-4091-JWB-RES

**MEMORANDUM AND ORDER**

This matter comes before the Court on pro se Plaintiff Donna L. Huffman's Motion for Findings of Deposition Misconduct and Sanctions. ECF No. 122.[1] Defendant Forrest River, Inc., has filed a response in opposition, and Plaintiff has filed a reply in further support of the Motion. ECF Nos. 123 and 125. For the reasons explained below, the Motion is denied.

**I.    BACKGROUND**

Although Plaintiff proceeds pro se, she is a trained attorney who previously appeared in this District while she was admitted to practice and has filed multiple cases pro se.[2] In this specific

---

[1] Generally, pro se litigants are entitled to liberal construction of their filings. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the Court does not assume the role of the pro se party's advocate. *Id.* In this case, however, Plaintiff is a trained attorney, which means that she may not be entitled to the same liberal construction extended to pro se litigants. *See, e.g., Cohen v. Hartman*, No. 23-1364, 2024 WL 4234967, at *1 n.1 (10th Cir. Sept. 19, 2024) (noting that because plaintiff had legal training, she was not entitled to liberal construction of her filings but concluding that even if her filings were entitled to liberal construction, the court would reach the same conclusion). Regardless of whether the Court liberally construed Plaintiff's filings, it would reach the same conclusion.

[2] Her more recent cases in this District include: *Huffman v. State of Kan.*, No. 25-2088-HLT-TJJ; *Huffman v. Rural Water District No. 9 of Jefferson County*, No. 25-4092-HLT-RES; *Huffman v. City of Oskaloosa, Kan.*, No. 23-4019-TC-RES; *Huffman v. RV Retailer, LLC, et al.*, No. 22-4061-DDC-ADM; *Huffman v. U.S. Bank Nat'l Ass'n*, 20-2135-JWB-JPO; *Huffman*

lawsuit, Plaintiff's Second Amended Complaint asserts multiple breach-of-warranty, breach-of-contract, tort, and Kansas Consumer Protection Act claims against Defendant, the alleged manufacturer of a recreational vehicle ("RV") that Plaintiff purchased and which she alleges was defective in multiple ways. *See generally* ECF No. 53 (Second Amended Complaint). Defendant denies that the RV was defective or that it was in any way responsible for any defects, and it asserts various defenses. *See generally* ECF No. 89 (Amended Answer).

A. **Start of Discovery**

After resolution of multiple motions to dismiss, including those filed by now-dismissed Co-Defendants, discovery began in earnest approximately a year ago, in the fall of 2024.[3] Since that time, this case has become mired in contentious disputes and delays, with fault on both sides. Despite what is a now a straightforward, single-Plaintiff/single-Defendant case concerning allegations of a defective RV, the undersigned has fielded an extraordinary number of requests for discovery conferences.[4] But what the docket does not fully capture is the sheer volume of emails

---

*v. U.S. Bank, N.A.*, No. 20-2135-JWB-JPO; and *Huffman v. State of Kan. Dep't of Children and Families*, No. 17-2250-JWB-GEB.

[3] *See generally* ECF No. 36 (Initial Order Regarding Planning and Scheduling setting the Rule 26 planning conference for February 14, 2024); ECF No. 42 (after conducting a scheduling conference, temporarily staying discovery pending a ruling on motions to dismiss because they raised jurisdictional issues); *see also* ECF No. 61 (September 25, 2024 Order requiring the submission of a proposed scheduling order on or before October 18, 2024, and reconvening the scheduling conference on October 30, 2024, following a ruling on the motions to dismiss); ECF No. 64 (October 24, 2024 Order granting Plaintiff's unopposed motion to reset the scheduling conference for December 18, 2024); ECF Nos. 66-67 (Minute Entry and Scheduling Order following the December 18, 2024 scheduling conference).

[4] *See, e.g.,* ECF No. 71 (convening a discovery conference to take up the parties' disputes regarding the entry of a stipulated protective order); ECF No. 91 (denying without prejudice Defendant's request for a discovery conference concerning Plaintiff's discovery responses because the parties had not exhausted their meet-and-confer obligations and providing additional specific guidance); ECF No. 95 (order granting Plaintiff's motion for an extension of time to meet and confer with defense counsel and summarizing the parties' communications to the Magistrate Judge's chambers concerning discovery issues); ECF No. 99 (convening a discovery

the undersigned has received regarding these and other discovery disputes—despite the Court's repeated admonitions to the parties to cease sending such communications the Court.

Despite D. Kan. Rule 37.2 requiring all parties to exhaust their good faith meet-and-confer efforts prior to raising any discovery disputes with the Court, the Court has refereed disputes that are typically resolved by parties by reaching reasonable agreements. For example, the parties could not agree on a protective order that was largely based on the District's model protective order—an unusual occurrence in any case filed in this District, much less a non-complex commercial case. *See* ECF No. 70 (Defendant's contested Motion for a Protective Order); *see also* ECF No. 94 (Defendant's response brief opposing Plaintiff's motion for an extension of time based on Plaintiff's stated medical issues). This inability to work together in any professional manner has continued through the deposition at issue in Plaintiff's Motion to the present.[5]

### B. The September 12, 2025 Deposition

As is relevant to this Motion, on September 12, 2025, Plaintiff took the deposition of Douglas Lown, an individual who inspected the RV and who, at the time of the deposition,

---

conference concerning Plaintiff's responses and objections to Defendant's Interrogatories and Requests for Production); ECF No. 108 (denying without prejudice Plaintiff's and Defendant's requests for a discovery conference for failure to exhaust their meet-and-confer obligations and providing specific guidance regarding Plaintiff's deposition); ECF No. 120 (discovery order addressing multiple discovery disputes, including the deposition at issue in this Motion, following the final pretrial conference); ECF No. 126 (addressing further discovery issues after Plaintiff emailed the Magistrate Judge's chambers "for assistance in discovery"); ECF No. 132 (taking up multiple requests for relief and denying any requests for a discovery conference because those issues did not appear ripe in that the motion stated Plaintiff had not yet reviewed Defendant's amended privilege log and Defendant was producing more documents).

[5] Again, by way of example only, the parties are currently engaged in the creation of the proposed pretrial order. Despite the clear instructions in the pretrial order requiring the parties to include stipulations as to facts and exhibits, the parties failed to include even a single fact or exhibit stipulation in their original proposed pretrial order or the revised draft submitted on November 14, 2025. *See* ECF No. 132 (memorializing the failure).

3

Defendant had contemplated designating as an expert witness. *See* ECF No. 122-1 at 2 (deposition transcript where Plaintiff asked defense counsel if Mr. Lown was designated as Defendant's expert and defense counsel responded by stating that Defendant's expert designations were due the following week). According to the transcript, the deposition began at 10:04 a.m. and ended at 11:28 a.m., with at least one short break at Plaintiff's request. *See generally* ECF No. 122-1. At no time during the deposition did any party contact the Magistrate Judge's chambers to arrange for a discovery conference regarding any conduct at this deposition.

In support and opposition to Plaintiff's Motion, the parties have filed most of the transcript from this deposition. *See* ECF Nos. 122-1, 123-1. To be kind, the transcript is unflattering to both sides. Defense counsel repeatedly asserts objections that go far beyond mere form objections. Plaintiff retaliates to these speaking objections with unnecessary sarcasm and personal attacks on defense counsel:

> Plaintiff: I was just wondering if you have a breathing issue or if you're huffing to try and make a point, Jonathan.
>
> Defense counsel: Nope. I'm just objecting, is what I was doing, and I just did. So I object to form yet again. Go ahead. You can answer.

ECF No. 122-1 at 12;[6] *see also id.* at 27 (Plaintiff: "What is your anger issue there?"). And defense counsel responds with his own personal attacks. *See id.* (Defense counsel: "Every single point along the way in this case there's been delays in providing me documents and doing everything. I've had to bring motions to compel. So you understand fully, and you know - you know the game.

---

[6] Plaintiff suggests that the Court to review the video of this deposition. ECF No. 122 at 2 n.2 ("Undersigned's impression is that the video is helpful if allowed."), 5 ("I also certify that that the tone and voice with the non verbal behavior which is absent on the dry record would support Plaintiff's impression and is available by video. His arms were shaking, characterized by unwarranted hostility or anger."). The Court declines the offer because the video is not necessary to resolve this Motion.

You have played this game enough with numerous, numerous lawsuits. You understand. I know - this isn't your first rodeo. Just continue with your deposition."). The parties also spent time casting aspersions regarding whether notice of a subpoena was or was not issued consistent with Rule 45, a dispute the parties could—and should—have resolved by merely consulting the docket. *See id.* at 15-18. This discussion including the following:

> Defense counsel: I've never seen a notice of any subpoena issued, and that's entirely improper if it was not noticed, so I'll object to the use of any of these documents, but go ahead. We'll discuss that later. You're supposed to issue a notice of subpoena prior to issuing—having this being issued. If you did that, I have never seen it, so—
>
> Plaintiff: Well, here. Let's grab the phone, because I take severe objection to the way I have been treated in the deposition, and the fact that you didn't do your job and notice it is not my fault.
>
> Defense counsel: No, it is, because I know you probably did not file it. But you can go ahead. If you did, let me know.

ECF No. 122-1 at 16.

Conspicuously, Plaintiff's filed transcript excerpt ends abruptly. *See id.* at 27. In its response, Defendant filed the portion of the deposition transcript reflecting the conclusion of the deposition, which reads as follows:

> Plaintiff: Okay. Okay. And I may have asked this, but I didn't see it specifically. So if I asked it, I apologize, but I want to verify that you did not contact Truma, correct?
>
> Lown: I did not.
>
> Plaintiff: Okay. Okay. I think that's my direct, if you would like to cross-examine.
>
> Defense counsel: I don't have any questions. I'll reserve for trial, or after designation.
>
> Videographer: This concludes the deposition. The time is 11:27. We are off the record.

5

ECF No. 123-1 at 2.

### C.   Plaintiff's Motion for Additional Attendee, ECF No. 110

Discovery issues persisted following Mr. Lown's deposition, with Plaintiff filing an October 6, 2025 motion for an order authorizing her to bring "an assistant and/or security for the in-person deposition this week." ECF No. 110 at 1. That motion appears to quote correspondence Plaintiff sent to defense counsel regarding both the September 12 deposition and her own upcoming deposition:

> 'THAT SAID, your constant conduct towards me requires a conference.  It was apparent why I spent the funds for a video depo given how hostile you were and the total inability to conduct yourself as a professional rather interrupting argumentatively immediately with long objections, making an objection regarding a privilege that hadn't attached, and was pre-objecting rather than listening to the questions to interrupt my depo and coach the witness. Making derogatory statements about me had no place there.  That was nothing compared to your constant hostility which, when reviewed, will reveal why I will need others at this depo.  No doubt you need a reminder about depo conduct and I will need some protective allowances.  I sincerely think not being in the room with you is appropriate considering your conduct.'
>
> 'You failed to mention a word about a conference.'

*Id.* at 2 (verbiage and quotation marks original).  Despite referencing issues during the September 12 deposition, Plaintiff had not requested a discovery conference regarding that deposition or her own subsequent deposition.

On October 6, 2025, the Court denied this motion for multiple reasons, including because Plaintiff filed a discovery-related motion prior to requesting a discovery conference with the Court and prior to conferring with Defendant, in violation of D. Kan. Rule 37.1(a). ECF No. 111. Again, at that time, Plaintiff had not requested any discovery conference with the Court related to the September 12, 2025 deposition.

### D. Pretrial Order Process

On October 24, 2025, the parties emailed a proposed pretrial order to the Magistrate Judge's chambers. In this proposed pretrial order, Plaintiff references for the first time potential Court intervention regarding the September 12 deposition, which occurred nearly a month-and-a-half earlier. The draft stated that "Plaintiff may file costs shifting for deposition misconduct." (verbiage original.) Subsequently, on October 30, 2025, Plaintiff sent an email to the Magistrate Judge's chambers, with defense counsel carbon copied, stating in full:

> Dear Chambers,
>
> I am concerned about filing the motion prior to reaching out for permission. I had reached out in an attempt to discuss the deposition conduct which today I obtained the response that there is nothing to discuss. I am writing to secure the 30 day time frame.
>
> I obtained a video deposition of the designated expert witness. The deposition conduct was disruptive, argumentative, suggestive, and the objections (including the tone) were outside permissible or reasonable bounds. I dealt Counsel's obvious anger with arms shaking the majority of the deposition and a tone which is only captured on the audio. Opposing counsel was basically barking at me after his long argumentative interruptions.
>
> Counsel engaged in conduct to derail the deposition even engaging in a long rampage accusing undersigned of failing to file a notice of intent to serve a subpoena after interrupting and not allowing an answer before engaging in an inquiry of me of which offensive comments were made and no apology was offered after pages of berating me and stating it was improper and not done with 3 other people there to hear it despite I was not a witness took over the depo asking me questions. Starting a fight because he failed to be aware of a properly filed document. Pages later despite giving the ECF number and details he states he guaranteed it was not and that I failed to precisely list- none of which was accurate or appropriate and took a large chunk of time and pages.
>
> With the witness sworn in at page 5 of the transcript, by page 8 I asked a simple yes or no question and was met with a pre-emptive objections for questions *not even asked*. Which then was an aggressive interruption and an instruction not to answer a question

7

> not even asked which went to coaching. I had objection "argumentative" inappropriate and inaccurate.
>
> Lengthy speaking objections and frustrated the examination with Counsel finishing by telling me what to do as if he were a judge rather than opposing counsel.
>
> By page 26 I offered a standing objection, frankly allowing opposing counsel to preserve everything. After refusing then we agreed the objection would just state "object to form". Within pages I got more coaching "calls for speculation as to how they were installed" (prior to the response which is coaching). Then disrupting by objecting after an answer or before a question. At half way I asked if Counsel was having a breathing problem or huffing to make a point because the conduct was so obnoxious. There are many examples not included.
>
> I request to submit a cost shifting motion and sanctions for the conduct. I shouldn't have had to deal with or pay for a 7 page running tantrum (for example) or the things said to me.
>
> Thank you,
>
> Donna Huffman

(verbiage original). The undersigned's courtroom deputy replied to the email, copying defense counsel, and stated in relevant part:

> Ms. Huffman,
>
> D. Kan. Rule 37.1(a) requires a pre-motion discovery conference "[b]efore filing any disputed discovery-related motion and after satisfying the duty to confer or make a reasonable effort to confer in D. Kan. Rule 37.2[.]" Judge Schwartz typically denies any disputed discovery-related motion when a party fails to comply with either D. Kan. Rule 37.1 or D. Kan. Rule 37.2. Judge Schwartz will take up this issue at the final pretrial conference, including setting an expedited briefing schedule if motion practice becomes necessary. Thank you.

The Court took up this issue at the final pretrial conference on November 5, 2025, in addition to other outstanding discovery issues. *See generally* ECF No. 120 (Order following final

pretrial conference). Among other things, Plaintiff stated on the record during that conference that she elected to end the deposition "because I couldn't tolerate it anymore."

Plaintiff further stated on the record that while she did not ask all the questions she had wanted to ask, she also did not preserve the issue. The Magistrate Judge explained that if there was that level of disagreement during a deposition, the Magistrate Judge would have expected Plaintiff to have requested a discovery conference to quickly resolve these issues, a common practice in this District when significant disputes arise during a deposition. The Magistrate Judge further asked what relief Plaintiff was seeking if she was not requesting to reconvene the deposition. Plaintiff stated she was requesting cost-shifting.

The Court granted leave for Plaintiff to file a motion on this issue and set an expedited briefing schedule and abbreviated page limitations so the Court could quickly resolve this matter given the late stage of this case. *See* ECF No. 120 at 1 (order following final pretrial conference memorializing the reasons why the Court was expediting briefing and imposing shortened page limitations). As stated on the record during the final pretrial conference and memorialized in the Court's subsequent order, the parties have submitted a proposed pretrial order that requires significant revisions. *See id.* at 2. The Court encouraged the parties "to focus their efforts on the significant revisions required to the proposed pretrial order and to work together to obviate the need for time-consuming, late-stage discovery motions given the significant amount of work needed to finalize the pretrial order." *Id.*

## II.  LEGAL STANDARD

Plaintiff moves for sanctions under Federal Rule of Civil Procedure 30(d)(2). ECF No. 122 at 2. That subsection states that the Court "may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes,

delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). The rule authorizes sanctions "not only when a deposition is unreasonably prolonged, but also when an attorney engages in other practices that improperly frustrate the fair examination of the deponent . . . ." *O'Bannon v. Recover-Care Meadowbrook Rehab. LLC*, No. 24-2060-JWB-ADM, 2024 WL 4894147, at *3 (D. Kan. Nov. 26, 2024) (quoting the advisory committee's note to the 1993 amendments).

Rule 30(d)(2) gives the Court "discretion to impose appropriate sanctions when a person 'impedes, delays, or frustrates the fair examination of the deponent,' but the district court in no way is obligated to do so." *Nebeker v. Nat'l Auto Plaza*, 643 F. App'x 817, 826 (10th Cir. 2016) (citing Fed. R. Civ. P. 30(d)(2)'s language that the court "*may* impose an appropriate sanction"); *Kansas Heart Hosp., LLC v. Smith*, No. 21-CV-1115-KHV-TJJ, 2022 WL 1540407, at *2 (D. Kan. May 16, 2022) (accord). In other words, sanctions are not mandatory. *See Uhlig LLC v. PropLogix, LLC*, No. 22-2475-KHV-ADM, 2024 WL 1239719, at *8 (D. Kan. Mar. 22, 2024). Rather, courts have considered the conduct at issue and other circumstances to determine whether sanctions were warranted. *See id.* (explaining that the cases cited by the moving party did not mandate an award of sanctions for deposition misconduct but instead "the courts considered the circumstances and the attorney's conduct and, in their discretion, found sanctions were warranted").

### III. DISCUSSION

In its discretion, the Court finds that sanctions are unwarranted here. The Court reaches this conclusion by considering both defense counsel's conduct at issue and other circumstances, including Plaintiff's own conduct during the deposition and her delay in raising this issue with the Court. Ultimately, the deposition transcript reflects a continuation of the unnecessarily contentious

history between the parties. The Court first addresses defense counsel's conduct and next addresses the circumstances that make sanctions inappropriate.

### A. Defense Counsel's Conduct

Plaintiff's Motion lists multiple instances in which Plaintiff believes defense counsel engaged in sanctionable conduct under Rule 30(d)(2). The Court has reviewed Plaintiff's arguments and the portions of the deposition transcripts both parties have attached as exhibits. The Court agrees with Plaintiff that at least some of defense counsel's conduct impeded, delayed, or frustrated the fair examination of the witness.

Fed. R. Civ. P. 30(c)(1) requires that "examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence, except Rules 103 and 615." Objections "must be stated concisely in a nonargumentative and nonsuggestive manner." Fed. R. Civ. P. 30(c)(2). The District of Kansas' Deposition Guidelines augment the Federal Rules and are mandatory. *See Cerda v. Cillessen & Sons, Inc.*, No. 19-1111-JWB, 2020 WL 4500721, at *2 (D. Kan. Aug. 5, 2020). With respect to objections, the Guidelines state:

> Objections shall be concise and shall not suggest answers to or otherwise coach the deponent. Argumentative interruptions will not be permitted. The only objections that should be asserted are those involving privilege or work product protection or some matter that maybe remedied if presented at the time, such as an objection to the form of the question or the responsiveness of the answer. Other objections shall be avoided unless the deposition is being taken for the express purpose of preserving testimony.[7]

Failure to comply with the Federal Rules or the Guidelines can subject an individual to sanctions under Rule 30(d)(2) when the conduct impedes, delays, or frustrates the fair examination of the

---

[7] District of Kansas Deposition Guidelines, https://www.ksd.uscourts.gov/deposition-guidelines (last visited Nov. 20, 2025).

11

witness. *See Cerda*, 2020 WL 4500721, at *2.

Defense counsel did not state all objections concisely and instead engaged in speaking objections that rose to the level of suggesting answers, which constituted improper coaching. The Court notes the following excerpt:

> Lown: Looks like a repair order, it looks like from a mobile technician, looking at it.
>
> Plaintiff: Okay. And can you tell what he repaired?
>
> Defense counsel: Object to form. Calls for speculation.
>
> Lown: Looks like replaced a thermal cutoff switch.
>
> Plaintiff: Okay. And how do you know that he replaced a thermal cutoff switch?
>
> Defense counsel: Objection to form. Calls for speculation. Lacks foundation.
>
> Lown: It's written on the repair order.
>
> Plaintiff: Yeah. I would say that if something is written on a repair order—you read English as your first language, right?
>
> Lown: Yes.
>
> Plaintiff: Okay. So—
>
> Defense counsel: Whether he can read it, Ms. Huffman, is not the question. The question is whether he has a foundation and the—or would be speculating as to say what repair work was done by someone who has not been has not testified in this case, or does not have any information regarding what was actually done. So I maintain my objection. Continue.
>
> Plaintiff: And when you see what's written by the Gary's RV Repair Service, do you know what that item would be used for?
>
> Defense counsel: Object. Lacks foundation. Calls for speculation as to any work performed by some other group, without any information, but go ahead.

ECF No. 122-1 at 9-10; *see also id.* at 4 (Defense counsel: "Object. It's vague and ambiguous as to newbie, but you can answer if you know."); *id.* at 10-11 (Defense counsel: "Objection. Lacks foundation. Calls for speculation. Incomplete hypothetical. Object to the form of the question.").

In support of these objections, Defendant cites to a case in the District that does not support the propriety of defense counsel's objections. In *Marksberry v. FCA US LLC*, No. 19-2724-EFM, 2021 WL 2142655, at *6 (D. Kan. May 26, 2021), the Court explained that proper objections are "nonsuggestive and efficiently alert the questioner to the alleged defect such that the questioner is given the opportunity to cure the objection." While speculative testimony may be subject to exclusion under the Federal Rules of Evidence, the case cited by Defendant does not hold that the types of objections defense counsel raised regarding speculation are nonsuggestive, and Defendant does not otherwise address caselaw in the District finding these types of objections to be improper. *See, e.g., Cincinnati Ins. Co. v. Serrano*, No. 11-2075-JAR, 2012 WL 28071, at *4 (D. Kan. Jan. 5, 2012) ("An objection that a question calls for speculation is a foundation objection and not a form objection. It also tends to coach the witness to respond that she does not know the answer. It is not waived if omitted under Rule 32, and is improper under Rule 30 and the guidelines."). Moreover, Defendant does not explain why objections telling the witness to answer "if you know" or "incomplete hypothetical" objections are anything other than witness coaching. *See, e.g., Marksberry*, 2021 WL 2142655, at *5 (finding that "objections instruct[ing] the witness he could answer 'if he knows'" were inappropriate and constitute "raw, unmitigated coaching").

But even if a short speculation objection were a proper form objection, defense counsel's speaking objections went far beyond a concise form objection. Defense counsel's objection stated that Mr. Lown "would be speculating as to say what repair work was done by someone who has not been has not testified in this case, or does not have any information regarding what was actually

13

done" and that Mr. Lown would be speculating "as to any work performed by some other group, without any information[.]" ECF No. 122-1 at 10. In other words, defense counsel was suggesting that Mr. Lown lacked the information to give a response. These objections failed to comply with Rule 30(c)(2) or this District's Deposition Guidelines because they were not stated concisely and they suggested answers to Mr. Lown—namely, that he would be speculating to answer questions about repair work performed by other individuals. *See Marksberry*, 2021 WL 2142655, at *6 ("Unfortunately, however, counsel's objections were much more verbose and took the form of speaking objections. They therefore were inappropriate and are overruled.").

Plaintiff lists multiple other instances in which she alleges defense counsel failed to comply with the Federal Rules and this District's Deposition Guidelines. The Court will not address each example because even if the Court agreed in full with Plaintiff's characterization of this conduct—which is not necessarily the case—it would not award sanctions for the reasons explained below.

### B.      Circumstances Making Sanctions Unwarranted

Despite the Court's concerns regarding the conduct at the deposition, the Court exercises its discretion to decline to award sanctions or cost-shifting in this case because of: (1) Plaintiff's own conduct during the deposition, which represents a continuation of the unnecessarily contentious history between the parties, and (2) Plaintiff's delay in raising this issue with the Court by declining to request a discovery conference during or immediately following the deposition, which had the potential to eliminate this dispute altogether.

#### 1.      Improper Conduct on Both Sides

The deposition transcript excerpts attached as exhibits to each side's brief shows that both Plaintiff and defense counsel failed to comply with this District's Deposition Guidelines, which again, are mandatory. *See Cerda*, 2020 WL 4500721, at *2. Section 1 of the Guidelines addresses

cooperation and states that "[c]ounsel are expected to cooperate with, and be courteous to, each other and deponents."[8]

Although Plaintiff proceeds pro se in this case, the Scheduling Order made clear that "[a]ll depositions will be governed by the written guidelines on the Court's website[.]" ECF No. 67 at 5. Additionally, Plaintiff is a trained attorney familiar with what is expected during a deposition given that she has appeared on behalf of clients in this District and represented herself pro se in multiple suits.[9] *See also Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) ("[T]his court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants."); *see also* D. Kan. Rule 83.5.4(f) (setting forth expectations of pro se litigants).

As Section II(B) above demonstrates, regardless of whatever frustration Plaintiff had with Defendant's objections, she retaliated by accusing defense counsel of "having a breathing issue," "huffing to try and make a point," and not doing his job. ECF No. 122-1 at 12, 16. This type of conduct is unproductive, unprofessional, and does not comply with the Gudelines' requirement that parties are expected to cooperate and treat each other courteously.

The briefing on the present Motion underscores the unnecessary hostility on both sides. Plaintiff quotes her own remark about defense counsel's "huffing" and further states that during the deposition, "I told him I was waiting for his tantrum to be over." ECF No. 122 at 3-4. In response, Defendant argues "Plaintiff does not have clean hands with regard to the basis for her motion and she has a history of filing frivolous motions and trying to impugn the integrity of members of the judicial system." ECF No. 123 at 4. The brief goes on to discuss Plaintiff's

---

[8] District of Kansas Deposition Guidelines, https://www.ksd.uscourts.gov/deposition-guidelines (last visited Nov. 20, 2025).

[9] *See supra* footnote 2 (citing Plaintiff's recent cases).

15

disciplinary proceedings regarding her Kansas law license, which are not particularly relevant to the present Motion. *Id.* at 4-5. This is just the most recent example of the parties' inability to cooperate with each other, as evidenced by the numerous discovery issues in this case.[10] What is worse here, however, is that the conduct is not a matter of simply declining to agree on terms of a form protective order or stipulating to brief extension of time. The conduct on both sides is antagonistic and wholly unproductive.

To be clear, the Court does not condone *any* of this conduct. However, given this history and Plaintiff's own conduct at the deposition, there is clearly fault on both sides, making sanctions against just one party unwarranted.

### 2. Failure to Timely Request a Discovery Conference

At any point during the September 12, 2025 deposition, either party could have paused the deposition to contact the Magistrate Judge's chambers to request a discovery conference, as contemplated by both the Guidelines and this District's local rules. Paragraph 9 of the Guidelines addresses this issue and states in full:

> Disputes that arise during the deposition which cannot be resolved by agreement and which, if not immediately resolved, will significantly disrupt the discovery schedule or require a rescheduling of the deposition, may be addressed by oral motion in a telephone conference with the Court, subject to the Court's availability. The court reporter recording the deposition shall record as part of the deposition the presentation of the issue to the Court and the Court's ruling.[11]

The Gudelines predate D. Kan. Rule 37.1(a), which was enacted in December 2022 and expressly requires a party intending to file "any disputed discovery-related motion" to first arrange

---

[10] *See supra* footnote 3, listing multiple discovery issues raised in this case.

[11] District of Kansas Deposition Guidelines, https://www.ksd.uscourts.gov/deposition-guidelines (last visited Nov. 20, 2025).

16

for a pre-motion conference with the Magistrate Judge. That rule is broader than the Guidelines in that the rule mandates a discovery conference whereas the Guidelines state that significant disputes "*may* be addressed by oral motion." (emphasis supplied).

The purpose of the pre-motion discovery conference is to prevent exactly what has happened here. Disputes apparently persisted throughout the deposition, and despite the parties' history of repeatedly contacting the Magistrate Judge's chambers to request discovery conferences or to raise other discovery-related issues, no party called or emailed the Court during or immediately following the deposition. Instead, Plaintiff waited a month-and-a-half before she sent an October 30, 2025 email to the Magistrate Judge's chambers requesting permission to file a cost-shifting motion for conduct that occurred during the September 12, 2025 deposition. Notably, Plaintiff does not seek leave to reconvene the deposition, which it appears she voluntarily concluded. *See* ECF No. 123-1 at 2 ("Okay. Okay. I think that's my direct, if you would like to cross-examine.").

Had Plaintiff sought a discovery conference during the deposition, the Court doubts that the present motion would be necessary. This is the purpose of D. Kan. Rule 37.1(a)—to aid in resolving or narrowing discovery disputes quickly so that discovery issues do not derail a case schedule or result in time-consuming collateral motion briefing where it can be avoided. *See Uhlig*, 2024 WL 1239719 at *8 ("Either way, a one-hour discovery conference could have avoided the histrionics in the current motion and saved party and court resources. The court requires such pre-motion conferences to mitigate against the risk of [a party] getting so spun up over discovery disputes, as is the case here, that they get mired in protracted disputes that bog down the case.")

The Court also considers Plaintiff's delay in raising this issue. D. Kan. Rule 37.1(c) states in full that:

> Any discovery-related motion must be filed within 30 days of the default or service of the response, objection, or disclosure that is the subject of the motion, or, for all other disputes, within 30 days after the movant knew or reasonably should have known of the potential dispute. The court may deny any motion filed after that 30-day period as untimely unless the movant demonstrates diligence in attempting to resolve the specific discovery dispute at issue.

The Court need not decide whether a Rule 30(d)(2) sanctions motion is subject to D. Kan. Rule 37.1(c)'s 30-day rule, which was broadened by the 2022 amendments and now applies to *any* discovery-related motion.[12] The Court has taken up Plaintiff's November 10, 2025 Motion on its merits rather than ruling on timelines grounds.

But it is fair to consider Plaintiff's decision to wait more than a month-and-a-half after the deposition to raise this issue with the Court. The purpose of D. Kan. Rule 37.1(c) is to ensure the Court can address discovery issues "while they are still fresh, and in turn expedite litigation." *KPH Healthcare Servs., Inc. v. Mylan N.S.*, No. 2:20-CV-2065-DDC-TJJ, 2024 WL 3890162, at *2 (D. Kan. Aug. 20, 2024). Regardless of whether Plaintiff's Motion is subject to D. Kan. Rule 37.1(c), Plaintiff's material delay in contacting the Court—waiting until after the close of discovery and after the submission of a pretrial order—did nothing to facilitate the prompt resolution of this dispute. Instead, the parties have spent time briefing a sanctions motion for issues the Court likely could have resolved on September 12, 2025, and they have done so when they should have been focused on making the significant and substantive requested revisions to their proposed pretrial order—all with an impending an impending dispositive-motion deadline.

---

[12] The prior version of this rule was limited to motions to compel. *See No Spill, LLC v. Scepter Candada*, Inc., No. 2:18-CV-2681-HLT-KGG, 2021 WL 5906042, at *3 (D. Kan. Dec. 14, 2021) (quoting a prior version of the rule, which stated that "[a]ny motion to compel discovery in compliance with D. Kan. Rules 7.1 and 37.2 must be filed and served within 30 days of the default or service of the response, answer, or objection that is the subject of the motion, unless the court extends the time for filing such motion for good cause. Otherwise, the objection to the default, response, answer, or objection is waived" (bolding removed)).

While it was certainly Plaintiff's right to proceed with the deposition and not immediately request a discovery conference, that decision contributed to the circumstances for which she now requests that the Court shift costs. To award sanctions in this instance would punish only one side when Plaintiff also bears responsibility.

## IV.   CONCLUSION

In its discretion, and after considering the conduct of both sides, the Court finds that sanctions are not warranted in this instance for the reasons explained above. Plaintiff's Motion is denied.

**IT IS THEREFORE ORDERED** that Plaintiff Donna L. Huffman's Motion for Findings of Deposition Misconduct and Sanctions, ECF No. 122, is **DENIED**.

**IT IS SO ORDERED.**

Dated: November 25, 2025, at Topeka, Kansas.

/s/ Rachel E. Schwartz
Rachel E. Schwartz
United States Magistrate Judge