IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DONNA L. HUFFMAN,

       Plaintiff,

v.                                        Case No. 23-4091-JWB

FOREST RIVER, INC.,[1]

       Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on Defendant's motion for summary judgment.  (Doc. 142.)

The motion is fully briefed and ripe for decision.  (Docs. 143, 144, 162, 163, 168.)  The motion is

GRANTED IN PART and DENIED IN PART for the reasons stated herein.

## I.    Facts

The facts set forth herein are taken from the second amended complaint ("SAC")[2] and are

material to the issues on summary judgment and uncontroverted or, if controverted, viewed in a

light most favorable to Plaintiff.[3]

This lawsuit stems from allegations that Plaintiff's recreational vehicle ("RV")

manufactured by Forst River was defective.  Forest River is an Indiana company that manufactures

---

[1] Although this case initially had multiple defendants, the only remaining defendant to this action is Forest River, Inc. ("Defendant" or "Forest River").  (Docs. 51, 60.)

[2] Before proceeding, the court makes a brief observation.  In Plaintiff's response, the record citations listed in her objections are, in many instances, impossible to discern.  For example, she cites to "SJ Guide at EX 53," "FACT 33," "Ex 1, trans P 235 at 20-21," and "Ex 1, p 112 at L 12 -113 L 3, P 162 L 2, 200 4-10" to name a few.  (Doc. 162.) The court cannot locate an exhibit 53 or exhibit 1 nor does Forest River have a fact numbed "33" within their statement of uncontroverted facts.  (Doc. 144.)  Accordingly, any citations that the court could not decipher or locate were not considered.  *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in briefs.").

[3] Due to the time expended by the parties revising the pretrial order, the magistrate judge exercised her discretion to temporarily suspend its entry.  (Doc. 141.)  As noted below, the parties are ordered to resume their work in finalizing the pretrial order so that it may be entered.

RVs and sells through independent authorized dealerships across the country.  (Docs. 144 ¶¶ 27.)  Forest River also enters into and services warranty contracts in connection with the manufacture of those RVs.  Forest River does not manufacture an RV as a single unit; rather, it builds in stages, with numerous other third-party manufacturers supplying the components that make up the RV's systems.  (*Id*. ¶ 20.)  Forest River completed manufacture of the RV at issue and delivered it to RV Retailer Texas, LLC d/b/a Motor Home Specialists ("MHS"), an independent Texas dealership.  MHS and Forest River signed an agreement where they agreed that MHS is not an agent of Forest River, and its actions are not imputed to Forest River.  (*Id*. ¶¶ 11, 24; *see* Doc. 144-5 at 68–77.)  Before selling the RV to Plaintiff, MHS submitted two warranty claims to Forest River—one for a toilet tank level sensor and generator fuel line, and one for a water line—both of which Forest River attempted to resolve.  (Doc. 144 ¶ 25; *see* Docs. 163-1; 163-2; 163-3; 163-4; 162-10.)  According to Forest River, MHS took liberties with the RV by altering its parts prior to selling it to Plaintiff.  (Doc. 144 ¶¶ 14–17.)  MHS is no longer a party.  (Doc. 60.)

In 2020, Donna Huffman ("Plaintiff"), a Kansas resident, decided to purchase a new Mercedes Sprinter Isata 3 RV manufactured by Forest River.  She saw an advertisement from MHS, negotiated the purchase over the phone, and executed the purchase agreement via docu-sign on July 14, paying a $2,000 deposit and agreeing to financing.  (Doc. 162 ¶¶ 32–34; *see* Doc. 162-2.)  Plaintiff contends she docu-signed the sales agreement from her home in Kansas; however, she lists Corpus Christi, Texas, as her address.  (Doc. 162-2.)  The RV was scheduled for delivery on July 20 and Plaintiff left Kansas on July 19 to pick it up in Alvarado, Texas.  On July 21, once at the MHS dealership, Plaintiff signed the Forest River warranty registration form and completed the application for Texas title, on which she again identified a Corpus Christi, Texas, address.  (Docs. 144 ¶¶ 3–5; 9-1.)  On July 22, Plaintiff picked up the RV.  At no point before or during the

sale did Forest River have any contact with Plaintiff, make any representations to her, or solicit her to purchase the RV. (Doc. 144 ¶¶ 11–13; Plaintiff's Depo., Doc. 144-1 at 48:2–12.)

As part of the purchase, Plaintiff received a limited warranty, which covered Forest River's own workmanship and expressly excluded the chassis, tires, batteries, generators, appliances, audio/video equipment, and other third-party components. Additionally, the warranty explicitly requires that prior to an action to enforce an express or implied warranty, Forest River must be given written notice and an opportunity to remedy. The limited warranty further requires that any legal action to enforce it be commenced within ninety (90) days after the warranty period ends. But, as will be discussed in more detail below, the parties provide two limited warranty documents with two materially different warranty periods. The first, provided by Forest River, purports to last for one year or 12,000 miles. (*See* Doc. 144-5 at 5 ("Warranty One").) The second, provided by Plaintiff, alternatively lasts for two years or 24,000 miles. (*See* Doc. 162-8 at 3 ("Warranty Two").)[4] However, the court notes that Plaintiff's exhibit, which is a Forest River warranty claim form, mentions a "warranty expiration date" of July 21, 2022—which coincides with the warranty period indicated in Warranty One. (Doc. 163 at 1.)

Upon arrival to take possession of the RV, Plaintiff allegedly encountered a series of problems. The first problem listed by Plaintiff is the "Generator and Fuel line." (Doc. 162 ¶¶ 44–45.) But in support, Plaintiff cites to a document indicating that, on July 20, 2020, an MHS mechanic reinstalled the generator fuel line after MHS submitted a warranty claim form. (Docs. 162-12; 163-5.) The next problem listed by Plaintiff was the "Toilet & Tank sensors were not installed." (Doc. 162 ¶¶ 46–51.) And again, Plaintiff states that "[Forest River] paid MHS to

---

[4] Throughout this order, because Warranty One and Warranty Two are identical other than what is defined as the warranty period, when the court refers to the "limited warranty" or "Forest River's limited warranty," it means any term in the warranty other than the length of the warranty period.

3

replace and install the RV tank sensor," in response to MHS submitting a warranty claim form. (*Id*. ¶¶ 48; Doc. 163-5.)  The next alleged problem was the "Shower [ ] Due to Broken Plumbing and Leaking."  (Doc. 162 ¶¶ 52–53.)  As evidence, Plaintiff cites to a document indicating that, on July 21, 2020, an MHS mechanic fixed the shower and ensured it was "leak free" after MHS submitted a warranty claim form.  (Doc. 162-10 at 3–4.)  The uncontroverted facts indicate that all of these alleged problems were resolved prior to Plaintiff leaving the lot with her RV.

After leaving the lot, Plaintiff appears to have had more problems with the RV.  The first occurred on August 9, 2020, and involved an electrical fuse on the refrigerator.  (Doc. 162 ¶¶ 77–79.)  Plaintiff submitted a warranty claim directly to Forest River, the only time Plaintiff submitted a warranty claim.  (Docs. 163; 144 ¶ 25.)  The warranty form appears to indicate that Forest River approved the entire $197 expense associated with replacing the electrical fuse; however, Plaintiff contends that no payment has ever been received.  (Docs. 163; 162 ¶ 77.)  The second problem was reported on August 11, 2020, when the motorized steps to get into the RV stopped working. (Doc. 162 ¶¶ 54–63.)  Plaintiff informed Forest River of this problem by email.  (Doc. 162-24.) Through a series of emails between Forest River representative Danielle Sodeman and Plaintiff seeking to troubleshoot the motor for the RV's retractable steps, Forest River eventually shipped replacement parts to Yingling's, an authorized Kansas dealership, and arranged warranty repairs. (Docs. 163-1–163-4.)  Plaintiff goes on to state that "[t]he step was repaired."  (Doc. 162 ¶ 61.) The next problem complained about by Plaintiff occurred much later in June of 2023.  That problem involved the hydraulic leveling jack system which she claims leaked fluid.  (*Id*. ¶¶ 64– 67.)  However, Plaintiff does not mention making a warranty claim with Forest River and merely attaches as evidence of this problem a receipt wherein it appears she paid approximately $375 for the hydraulic system to be repaired.  (Doc. 162-13.)  Plaintiff goes on to vaguely mention a slew

of other problems that, as best the court can discern, includes (1) television wires that were not connected, (2) the tire pressure monitoring system—which Plaintiff does not allege to have had any problems, only that it was subject to a national recall, (3) shower clips, (4) window shades on passenger side will not close, and (5) "plastic tire extenders." (Doc. 162 ¶¶ 68–76, 80–83.)[5] Notably, Plaintiff does not allege having submitted a warranty claim on any of these alleged problems nor does she list any repairs being paid for in relation to them. In total, Forest River received three warranty claims: two pre-delivery MHS claims described above, and one submitted by Plaintiff for a refrigerator fuse. (Doc. 144 ¶ 25.) Plaintiff contends that these warranty claims were not properly resolved but fails to provide admissible evidence of ever having a claim denied or even informing Forest River of her dissatisfaction with the completed repairs.

Plaintiff also discovered that while the RV's window sticker identified it as a 2020 model, the title reflected it was manufactured in 2018. (*Compare* Docs. 162-3 *with* 162-4.) In August 2020, Plaintiff sought roadside assistance and an extended warranty from Forest River but was informed that their "records do not show anything that would warrant an extension of roadside assistance or an extended warranty." (Docs. 162-27; 162 ¶ 40.)

As a result, Plaintiff filed suit on June 22, 2023, and Forest River removed the case to federal court on October 13, 2023. (Docs. 1-1; 1.) Plaintiff amended her complaint a second time on June 21, 2024. (Doc. 53.) In her SAC, she asserts multiple claims against Forest River, including breaches of four different contracts, fraud, misrepresentation, negligence, and violations of multiple provisions of the Kansas Consumer Protection Act ("KCPA").[6] She seeks

---

[5] While Plaintiff mentions an extensive list of broken or unrepaired problems with the RV (*see* Doc. 53 at 6–9), she does not provide any admissible evidence in her response to Forest River's summary judgment motion substantiating any of these problems nor does she claim that she submitted any warranty claims, much less that any such claims were denied. Accordingly, the defects Plaintiff mentions in her SAC cannot support her breach of warranty claim.

[6] To the extent Plaintiff seeks injunctive relief on behalf of "other customers," she may not do so because she proceeds pro se and is an unlicensed attorney. (*See*, *e.g*., Docs. 53 at 24; 162 at 35.)

compensatory damages, statutory penalties, restitution or replacement of the RV, enforcement of the warranty, loss of value, and incidental and punitive damages. (*Id*. at 24.) On January 30, 2026, Forest River filed the instant summary judgment motion. (Doc. 142.) On March 24, Plaintiff filed a response (Doc. 162) and Forest River replied (Doc. 169). The court is now prepared to rule.

## II.     Standard

Summary Judgment. Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) (quoting *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015)). Conclusory allegations are not sufficient to create a dispute as to an issue of material fact. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004). In considering a motion for summary judgment, the facts set forth in the motion must refer "with particularity to those portions of the record upon which" the moving party relies. D. Kan. R. 56.1(a). "All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." *Id*. To properly dispute a proposed statement of material fact, the opposing party must "refer with particularity to those

portions of the record upon which the opposing party relies." D. Kan. R. 56.1(b)(1). Failure to properly controvert a proposed fact that is properly supported will result in a determination that the fact is admitted. *Coleman v. Blue Cross Blue Shield of Kansas, Inc.*, 287 F. App'x 631, 635 (10th Cir. 2008) (finding that the "district court was correct to admit all facts asserted in [the movants] summary judgment motion that are not controverted by a readily identifiable portion of the record.") (internal quotation and citation omitted).

Pro Se Standard. Generally, pro se litigants are entitled to liberal construction of their filings. *See Hall*, 935 F.2d at 1110. Here, the parties dispute whether Plaintiff—an attorney with a suspended license due to her disability—ought to be entitled the usual liberal construction of pleadings afforded pro se litigants. Forest River points to precedent showing that licensed attorneys representing themselves ought not be afforded the same deference as pro se litigants. (Doc. 143 at 5–6.) In response, Plaintiff argues she is entitled to "some liberal construction" because she is not currently practicing, but points to no authority. (Doc. 162 at 24.) Recently, the Tenth Circuit held that a pro se plaintiff was not entitled to liberal construction because she had legal training. *See Cohen v. Hartman*, No. 23-1364, 2024 WL 4234967, at *1 (10th Cir. Sept. 19, 2024). The same is true here: Plaintiff has legal training. Accordingly, the court will not afford Plaintiff's pleadings the liberal construction typically extended to pro se litigants. Even if the court were to construe her pleadings liberally, however, it would still reach the same conclusions.

## III. Analysis

### A. Personal Jurisdiction

Forest River first argues that the court lacks specific personal jurisdiction over it. (Doc. 143 at 6–13.) This argument, however, is materially identical to the argument Forest River made in its prior motion to dismiss, (Doc. 57 at 11–15), an argument that this court rejected. In that prior

order, the court explained that following the Supreme Court's decision in *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021), the Tenth Circuit held that a

> forum state can exercise personal jurisdiction over an out-of-state defendant that has injured a resident plaintiff in the forum State if (1) the defendant has purposefully directed activity to market a product or service at residents of the forum State and (2) the plaintiff's claim arises from essentially the same type of activity, even if the activity that gave rise to the claim was not directed at forum residents. In that circumstance, we say that the activity giving rise to the claim "relates" to the defendant's activity in the forum State.

*Hood v. Am. Auto Care, LLC*, 21 F.4th 1224 (10th Cir. 2021) (citing *Ford*, 592 U.S. at 366 & n.5). Applying this standard to the allegations in the instant matter, the court held that (1) "Forest River has purposefully directed activity at residents of Kansas by serving the area with the sale of their RVs through the dealers and by entering into warranty contracts with Kansas residents and performing those warranty obligations in Kansas" and (2) "Plaintiff's claims arise out of essentially the same activity—Forest River's issuance of the warranties and servicing of the same at third-party locations in Kansas." (Doc. 60 at 9–10.) Forest River makes no argument addressing those holdings. First, Forest River failed to address *Ford* or *Hood*—the two decisions on which this court's decision primarily rested. More importantly, however, Forest River fails to identify sufficient facts nor identifies any extraordinary circumstance on which the court should revisit that ruling. A motion for summary judgment is not a vehicle for relitigating issues already decided, and the court declines the invitation. Accordingly, "Forest River is subject to personal jurisdiction in Kansas." (Doc. 60 at 11.)

### B. Breach of Contract Claims

Count I of Plaintiff's complaint appears to include four breach of contract claims, which rest on the following alleged agreements: (1) a "sticker contract" reflecting features Forest River represented to be included on the RV ("Contract A"); (2) Forest River's express limited warranty

("Contract B"); (3) the roadside assistance warranty ("Contract C"); and (4) an oral promise by a Forest River representative to cover certain expenses Plaintiff incurred ("Contract D"). (Doc. 53 ¶¶ 39–42.) Plaintiff alleges the sticker contract was breached because the RV lacked the represented features and Forest River declined to cure. She alleges that the express warranty was breached when Forest River failed to perform repairs. As for the roadside assistance warranty, Plaintiff alleges it was breached when Forest River disregarded its terms. Finally, she alleges that Forest River breached an oral promise, made by a Forest River employee, by refusing to pay repair expenses that the employee had agreed to cover.

As an initial matter, Forest River failed to sufficiently address and otherwise failed to move for dismissal of Plaintiff's claims premised on Contracts A, C, and D in their summary judgment motion.[7] Forest River argues that Plaintiff's breach of contract claims are barred because they relate to components that are not covered under the terms of Forest River's limited warranty. (Doc. 143 at 14–17; *see* Doc. 144-5 at 5.) However, from what the court can discern from Plaintiff's complaint, it appears she is alleging breach of contracts independent, at least in part, of Forest River's limited warranty. (*See* Doc. 53 at 6–14.) Because there is no pretrial order, the court is left with the allegations in the SAC which clearly identify four separate breached contracts. Accordingly, Plaintiff's breach of contract claims premised on Contracts A, C, and D remain.

As for the claim premised on Contract B, Forest River argues that the components Plaintiff alleges to be defective are either expressly excluded from the limited warranty's coverage or were the responsibility of the independent dealership MHS, not Forest River. (Doc. 143 at 14–17.)

---

[7] The only arguable reference to these additional contract claims is Forest River's argument that any other representations or omissions were made by MHS. (Doc. 143 at 15–16.) This argument appears to be directed at Plaintiff's claim of breach of contract regarding Contract A. However, there is no evidence indicating what the "sticker contract" said or who placed it on the RV. As for Contracts C and D, Forest River fails to even discuss Plaintiff's allegations involving the roadside assistance warranty or any oral promises made by Forest River employees.

Forest River points to the limited warranty's express exclusion language: "Warrantor makes no warranty with regard to, but not limited to, the chassis . . . any mechanical parts or systems of the chassis, axles, tires, tubes, batteries and gauges, optional generators, routine maintenance, equipment and appliances, or audio and/or video equipment," as well as the owner's manual's additional excluded items such as the refrigerator, water heater, range, microwave, propane regulator, converter, smoke detector, and hitch/leveling jacks. (Docs. 144-5 at 5; 144 ¶¶ 22–23.) Forest River then catalogs the components forming the basis of Plaintiff's claims that it contends fall within those exclusions. (Docs. 143 at 15; 144 ¶ 24.) Forest River additionally contends that certain allegedly defective items were "robbed" or altered by MHS after delivery from Forest River and before sale to Plaintiff and that MHS, therefore, bears responsibility for any such modifications. (Docs. 143 at 15–16; 144 ¶¶ 14–16, 24.) Finally, Forest River asserts that of the warranty claims it received pursuant to the limited warranty, all three were resolved—two pre-delivery claims submitted by MHS and one post-delivery claim submitted by Plaintiff. Ultimately, Forest River argues that the warranty's exclusions must be enforced as written.

Plaintiff's response is difficult to follow, but it advances what the court understands to be three arguments. (Doc. 162 at 32–35.) First, Plaintiff contends that the limited warranty, by its terms in paragraphs 2 and 10, covers defects in "materials and workmanship." (*Id*. at 32.) She argues that even where particular components are excluded from coverage, Forest River's workmanship in manufacturing the RV—such as the installation, wiring, plumbing, etc.—remains within the scope of the warranty. Second, Plaintiff disputes Forest River's assertion that MHS "robbed" various parts from the RV, contending that the allegation is conclusory and lacks admissible evidence. (*Id*. at 34.) Third, Plaintiff disputes Forest River's characterization that only three warranty claims were submitted and that all three were "resolved." (*Id*.)

10

The court agrees with Forest River that the exclusion language in the limited warranty is enforceable as written. *See Marksberry v. FCA US LLC*, 606 F. Supp. 3d 1075, 1082 (D. Kan. 2022) ("Plaintiff cannot pick and choose what language to read from the Warranty."). But the court need not resolve whether each particular component or workmanship issue Plaintiff identifies falls inside or outside the limited warranty's coverage, because Plaintiff's Contract B claim fails for a more fundamental reason: she has not come forward with evidence on summary judgment that Forest River breached the warranty as to any submitted claim, and she did not submit warranty claims at all for the bulk of the defects she now asserts.[8]

The limited warranty does not operate as a freestanding promise that Forest River will detect, diagnose, and remedy every defect in the RV. How could it without knowing the problems exist? By its terms, the warranty obligates Plaintiff to submit warranty claims in writing and to deliver the RV to an authorized warranty service provider so that Forest River has notice of a claimed defect and an opportunity to remedy it. Those terms are enforceable. *See Marksberry*, 606 F. Supp. 3d at 1085–86 (granting summary judgment where the plaintiff failed to satisfy a condition precedent contained in the warranty); *Arnold v. CNH Indus. Am., LLC*, No. 21-2341-DDC, 2023 WL 6312266, at *16 (D. Kan. Sept. 28, 2023) ("Because plaintiff never reported the defect during the warranty period, defendant never had a chance to fulfill its end of the contract. . . . No reasonable factfinder could find that defendant breached the Express Warranty"). To survive summary judgment on a breach-of-warranty theory, Plaintiff must come forward with evidence

---

[8] It is uncontroverted that the limited warranty expressly requires Plaintiff to submit a claim. (Doc. 144 ¶ 25.) While Plaintiff objects to this fact (Doc. 162 ¶ 25), she points to no evidence in support thereof. The text of the limited warranty states as follows: "No action to enforce express or implied warranties shall be commenced without prior written notice to the manufacturer and/or Warrantor at the address listed above of the alleged defect or nonconformity or the authorized repair facility's failed repair attempt and MANUFACTURER, AT ITS DIRECT OPTION, SHALL HAVE A FINAL OPPORTUNITY TO REMEDY." (Doc. 144-5 at 10.)

11

that, for the defects she claims, she gave Forest River notice and an opportunity to cure, and that Forest River failed to do so.  *See* Fed. R. Civ. P. 56(c).  She has wholly failed to carry this burden.

The record establishes only three instances in which a warranty claim was submitted under the terms of the limited warranty.  (Doc. 144 ¶ 25.)  Two of those—the toilet tank level sensor/generator fuel line and the broken water line—were submitted by MHS prior to delivery, and the undisputed evidence is that Forest River addressed each through MHS's authorized repairs before Plaintiff ever took possession of the RV.  (Docs. 162-10 at 3–4; 162-12; 163-5.) To the extent Plaintiff was displeased with the workmanship of the repairs, she failed to resubmit a warranty claim, and thus there could be no breach.

The third claim was submitted by Plaintiff for a refrigerator fuse and was approved by Forest River for the full $197.81 expense.  (Doc. 163.)  Plaintiff even provides evidence that Forest River mailed the reimbursement check to Plaintiff's Corpus Christi, Texas, address as well as email correspondence wherein Forest River asks Plaintiff if she would like a new check issued to which Plaintiff never responds.  (Docs. 162-28 at 1; 162-27 at 1.)  Although Plaintiff disputes whether she ever received the $197 payment, her dispute is not over whether Forest River honored the warranty claim itself.  On this record, such a dispute does not create a triable issue on whether Forest River breached the limited warranty.  Similarly, when the motorized step failed in August 2020, Plaintiff notified Forest River, and although Forest River informed her that a warranty claim was not in their records for that issue, they ultimately shipped replacement parts as a "goodwill gesture" to Yingling's in Kansas, paid for the repair, and Plaintiff herself concedes that "[t]he step was repaired."  (Docs. 162-27 at 1; 162 ¶ 61; *see* Docs. 163-1–163-4.)  Plaintiff has identified no admissible evidence that any submitted warranty claim was denied, refused, or left unremedied. As to those defects, there is no genuine dispute that Forest River performed under the warranty.

12

As for the remaining defects Plaintiff alleges—the hydraulic leveling jack system, the unconnected television wires, the tire pressure monitoring system, the shower clips, the passenger-side window shades, the "plastic tire extenders," and the various other items she vaguely catalogs throughout her response and SAC—Plaintiff has not put forward any record evidence that she submitted a warranty claim, delivered the RV to an authorized warranty service provider, or otherwise placed Forest River on written notice of the claimed defect and afforded it the opportunity to remedy that the warranty requires. (*See* Doc. 162 ¶¶ 64–76, 80–83.) Indeed, the only documentation Plaintiff offers for the hydraulic leveling jack system is a 2023 receipt showing that she paid an unrelated mechanic approximately $375 for a repair—not a warranty claim submitted to Forest River. (Doc. 162-13.) She otherwise provides no admissible evidence. Without evidence that the conditions precedent of the limited warranty were satisfied, no breach of that warranty can lie as to those alleged defects. *See Marksberry*, 606 F. Supp. 3d at 1085–86. Plaintiff cannot defeat summary judgment by asserting in conclusory fashion that defects exist; she must show that she invoked the warranty's protections and that Forest River refused to honor them. She has not. The court holds that defendant deserves summary judgment against Plaintiff's claim for breach of the limited warranty.

In summary, Forest River's motion for summary judgment as to Count I is granted in part and denied in part. Summary judgment is granted as to Plaintiff's breach of contract claim premised on Contract B and is denied as to Plaintiff's breach of contract claims premised on Contract A, Contract C, and Contract D, which Forest River's motion did not adequately address.

## C. Tort Claims

Plaintiff brings three tort claims: fraud, misrepresentation, and negligence. (Doc. 53 at 14–17.) Her fraud claim concerns the RV's hydraulic leveling jack system, which she alleges Forest

River built with an old part that caused leaks and rendered the system inoperable. (*Id.* ¶¶ 59–69.) Her misrepresentation claim alleges the sticker identified the RV as a 2020 model when it was in fact manufactured in 2018—a discrepancy Plaintiff says she did not discover until she received the title. (*Id.* ¶¶ 70–78.) Her negligence claim alleges Forest River breached duties to build the RV free of defects, to deliver it with working features, and to perform repairs. (*Id.* ¶¶ 79–85.) Forest River moves for summary judgment on the grounds that all three claims are barred by the economic loss doctrine. (Doc. 143 at 17–18.)

The economic loss doctrine states that a buyer of defective goods cannot sue in tort where the injury consists only of damage to the goods themselves. *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866–76 (1986); *see also BHC Dev., L.C. v. Bally Gaming, Inc.*, 985 F. Supp. 2d 1276, 1287 (D. Kan. 2013) (the doctrine bars recovery of purely economic losses in tort "in circumstances governed by the law of contracts"). The doctrine rests on the principle that contract law is the proper vehicle for allocating the risk of product failure, while tort law is reserved for personal injury or damage to property other than the product itself. *See Nw. Ark. Masonry, Inc. v. Summit Specialty Prods., Inc.*, 31 P.3d 982, 988 (Kan. Ct. App. 2001). And the doctrine applies to components that are part of a larger product, with Kansas courts holding that "when component materials become indistinguishable parts of a final product, and there is harm resulting from a defective component of the product, the product itself has caused the harm." *Id.* At bottom, the doctrine seeks to prevent a party in litigation from asserting a tort remedy in a circumstance that is governed by contract law.

In response to Forest River's argument, Plaintiff points to this court's prior order denying a motion to dismiss Plaintif's tort claims on the basis that they are barred by the economic loss doctrine. (Doc. 60 at 11.) In that order, the court allowed Forest River to reassert the issue at

14

summary judgment.   On summary judgment, Plaintiff cannot rest on the allegations of her complaint; she "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.   To avoid the economic loss doctrine at this stage, it was Plaintiff's burden to come forward with record evidence that her tort claims seek recovery for something other than damage to the RV itself (or a component that is part of that RV)—*i.e.*, for personal injury or damage to other property.   She has not done so.   The damages identified in her response and in her SAC—loss of use, loss of value, repair costs, and the cost of components that allegedly failed or were missing—all relate to the RV itself.  (Docs. 53 at 24; 162 at 35–36.)   And in any event, Plaintiff has pointed to no admissible evidence to support those allegations.   Plaintiff has identified no personal injury, no damage to property other than the RV, and no losses traceable to anything outside the bargained-for product itself.   Her request to extend the warranties, whatever its merit, is a request for contract-based equitable relief, not an indication that her damages exceed economic loss.  (Doc. 162 at 35.)

Each of Plaintiff's tort claims arise from the same set of facts that gave rise to her contract and warranty claims—the alleged failure of the RV and its components to perform as Plaintiff expected.   As best the court can discern, the fraud claim concerns the hydraulic leveling jack system Forest River allegedly built with an old part; the misrepresentation claim concerns the model-year representation on the window sticker; and the negligence claim concerns Forest River's alleged duties to build the RV free of defects, to deliver it with working features, and to perform warranty repairs.  (Doc. 53 ¶¶ 59–85.)   These are precisely the kinds of claims that the economic loss doctrine commits to the law of contracts. *See Prendiville*, 83 P.3d at 1259–60; *BHC Dev.*, 985 F. Supp. 2d at 1287.   Plaintiff bargained for an RV and for the limited warranty that accompanied it; the law of contracts—and the warranty's own terms—is the proper vehicle for

15

redress.  In summary, the damage claimed by Plaintiff was economic loss as no property other than the RV allegedly sustained damage.  Accordingly, Forest River's motion for summary judgment on Plaintiff's tort claims of fraud, misrepresentation, and negligence is granted.

### D.  KCPA Claims

Plaintiff's KCPA claims fall into three categories.  First, she alleges deceptive acts—misrepresentations regarding the RV's characteristics, value, quality, and warranty coverage in violation of K.S.A. §§ 50-626(b)(1).  (Doc. 53 ¶¶ 86–94.)  Second, she alleges willful concealment of material facts, including mechanical defects, the RV's true age, missing features, and warranty benefits in violation of K.S.A. §§ 50-626(b)(2).  (*Id*. ¶¶ 95–98.)  Third, she alleges unconscionable acts under K.S.A. § 50-627[9] because (1) the price of certain equipment "grossly exceeded the price at which similar property or services were readily obtainable in similar transactions by similar consumers" and (2) she was unable to receive a material benefit from the RV transaction given the periods it was inoperable due to features that allegedly never worked.  (*Id*. ¶¶ 99–101).

Forest River moves for summary judgment under two theories.  First, that Plaintiff purchased the RV in Texas and the KCPA requires a transaction be made in the state of Kansas to impute liability.  (Doc. 143 at 18–19.)  Second, that Plaintiff cannot show Forest River committed a deceptive or unconscionable act as required for her KCPA claims.  (*Id*. at 19–20.)

As to the first argument, the KCPA only applies to a "consumer transaction" and the Kansas legislature has defined "consumer transaction" as the "sale, lease, assignment or other disposition for value of property or services within this state . . . to a consumer; or a solicitation by a supplier

---

[9] Plaintiff cites to K.S.A. § 50-637(a)(2) and (a)(3) in her complaint when alleging her unconscionability claims under the KCPA.  (Doc. 53 ¶¶ 99–101).  These sections do not exist.  Rather, § 50-637 refers to the powers granted to a court-appointed receiver, which has no relation to the facts of this case.  As such, the court believes that based on the allegations in Plaintiff's complaint, she meant to cite to K.S.A. § 50-627(b)(2) and (b)(3), which track almost verbatim the language from those statutes.  (*Id*.)  Forest River seems to have assumed the same thing.  (Doc. 143 at 21–23.)

with respect to any of these dispositions." K.S.A. §§ 50–624(c); 50–626(a); 50–627(a); *Montgomery v. Sprint Spectrum, L.P.*, 2007 WL 3274833, at *6 (D. Kan. 2007) ("The KCPA is not intended to serve as a nationwide basis for liability against Kansas companies"). In the instant matter, Plaintiff points to the RV sales agreement (Doc. 162-2) between her and MHS that she docu-signed while physically located in Kansas, the warranty work that was completed by Forest River in Kansas, and the related parts that were mailed by Forest River to Plaintiff at her Kansas address and says this is sufficient to find that the transaction occurred in Kansas for purposes of the KCPA. (Docs. 162 at 36–37; 163-1; 163-2; 163-3; 163-4.) However, the court need not resolve that issue because Plaintiff's KCPA claims fail on independent grounds: she has not produced sufficient evidence to create a genuine dispute of material fact as to whether Forest River engaged in a deceptive or unconscionable act in connection with the RV purchase.

Moving to Forest River's second argument, under the KCPA, no supplier shall engage in "any deceptive act or practice in connection with a consumer transaction." K.S.A. § 50-626(a). "[W]hether a deceptive act or practice has occurred under the [KCPA] is not a question of law for the court, but rather a question of fact for a jury to decide." *Manley v. Wichita Bus. Coll.*, 701 P.2d 893, 897 (Kan. 1985). But "summary judgment is appropriate on [KCPA] claims where there is no evidence of deceptive conduct." *Dana v. Heartland Mgmt. Co.*, 48 Kan. App. 2d 1048, 1063 (2013); *see Udell v. Kansas Counselors, Inc.*, 313 F. Supp. 2d 1135, 1145 (D. Kan. 2004) (granting summary judgment on KCPA deception claim where "the record is completely devoid of evidence from which it can be reasonably inferred that [defendant] engaged in any deceptive conduct").

With those standards in mind, the record before the court would not allow a reasonable jury to find that Forest River was involved in deceptive conduct as part of the RV transaction. First, the sale of the RV was a transaction between Plaintiff and MHS, an independent Texas

17

dealership. (Docs. 162-2; 144-3 at 4–13; Plaintiff's Depo., Doc. 144-1 at 48:2–12.) Forest River had no contact whatsoever with Plaintiff prior to or during the sale, and Plaintiff has adduced no evidence that Forest River had any knowledge of the circumstances under which Plaintiff was purchasing the RV from MHS. *Cf. Marksberry*, 606 F. Supp. 3d at 1082–83 (granting summary judgment on plaintiff's KCPA claim, holding no genuine issues of fact regarding defendant's deceptive conduct because the warranty terms were clearly conveyed to the plaintiff). Because Forest River had no knowledge of the RV transaction prior to its consummation, then it could not have knowingly represented that the RV had uses and benefits that it did not have, that the RV was original or new when it was not, that the RV had benefits or characteristics that it did not, nor was of a particular standard that differed from reality, as required by K.S.A. §§ 50-626(b)(1)(A), (1)(C), (1)(D), and (1)(F). And Plaintiff has put forth no facts from which the court could find that Forest River had any such knowledge. So, Forest River is entitled to summary judgment for Plaintiff's claims under K.S.A. §§ 50-626(b)(1)(A), (1)(C), (1)(D), and (1)(F). To the extent Plaintiff alleges deceptive conduct by Forest River involving post-sale interactions involving the warranty, there is no evidence in the record from which the court could say a genuine dispute of material fact exists. *See Dana*, 48 Kan. App. 2d at 1063. To the contrary, this dispute revolves around which warranty's terms are controlling and the scope of that warranty—not deceptive conduct.

Next, certain subsections of § 50-626—under which Plaintiff also brings her claims (Doc. 53 ¶¶ 95–97)—additionally require that the defendant act "knowingly" or "willfully." Namely, claims under § 50-626(b)(2), (b)(3), and (b)(8) demand willfulness as an essential element, which is an act "performed with a designed purpose or intent on the part of a person to do wrong or to cause injury to another." *Dana*, 48 Kan. App. 2d at 1063. In other words, "the use of 'willful' in the KCPA includes an intent to harm the consumer." *Unruh v. Purina Mills, LLC*, 221 P.3d 1130,

18

1139 (Kan. 2009).  Accordingly, it is not enough for Plaintiff to show that Forest River gave information that later proved to be inaccurate; rather, she must present evidence that Forest River "had a designed purpose to do wrong," that is, knowing the information was false.  *Tufts v. Newmar Corp.*, 53 F. Supp. 2d 1171, 1179 (D. Kan. 1999).  Plaintiff has failed to shoulder this burden.  As Forest River correctly points out, the record is devoid of evidence showing that they willfully used a falsehood or ambiguity regarding a material fact about the RV, willfully failed to state or concealed a material fact about the RV, willfully made a false statement involving consumer rights or remedies, nor made a false statement that repairs to the RV were needed.  Rather, the record reflects that Forest River actively participated in efforts to address problems with the RV.  Forest River shipped replacement parts to Plaintiff's Kansas address and to authorized Kansas service providers, and three warranty claims were submitted and processed pursuant to Forest River's limited warranty.[10]  (Docs. 163-1; 163-2; 163-3; 163-4.)  A manufacturer that is actively engaged in attempting to remedy a product's failures is not, by that conduct, deceiving the consumer within the meaning of § 50-626.  Nor is a manufacturer who disagrees about the scope of a warranty engaged in deceptive conduct.  So, Forest River is entitled to summary judgment for Plaintiff's claims brought under K.S.A. §§ 50-626(b)(2), (b)(3), (b)(8), and (b)(9).

Plaintiff's claims under K.S.A. § 50-627 fare no better.  Under the KCPA, "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction." K.S.A. § 50-627(a).  Dissimilar to deceptive acts claims that are often underlain with fact questions, "whether an action is unconscionable under the KCPA is a legal question for the court." *Via Christi Reg'l Med. Ctr., Inc. v. Reed*, 314 P.3d 852, 864 (Kan. 2013); *see Shigo v. Clark*, No.

---

[10] While Plaintiff objects to Forest River's assertion that they resolved each of Plaintiff's warranty claims (Doc. 162 ¶ 25), she does not appear to controvert the assertion that they at least attempted to remedy them.  Specifically, Plaintiff attaches an exhibit of what appears to be a log indicating that the warranty claims were processed.  (Doc. 162-10.)

21-2079-DDC, 2022 WL 2966320, at *6 (D. Kan. July 27, 2022).   Under Kansas law, an "unconscionable act or practice requires both supplier deception and unequal bargaining power." *Via Christi*, 314 P.3d at 867.

Here, Plaintiff cannot satisfy either element.  As discussed above, she has presented no evidence of deceptive bargaining conduct attributable to Forest River—a threshold failure that alone defeats the unconscionability claim.  *See State ex rel. Stovall v. DVM Enters., Inc*., 275 Kan. 243, 251, 62 P.3d 653, 658 (2003) (affirming summary judgment against plaintiff because unconscionability requires both deceptive bargaining conduct and unequal bargaining power).  Nor has Plaintiff presented any evidence demonstrating unequal bargaining power. Plaintiff's argument that the RV's sale price grossly exceeded the fair market value is unsupported by evidence in the records.  She provides no evidence of other RV sales, or even what the fair market value is.  Under these circumstances, Plaintiff cannot carry her summary judgment burden on her claim that defendant violated K.S.A. § 50-627(b)(2).  The same holds true of Plaintiff's allegations under § 50-627(b)(3).  Her argument that she was unable to receive a material benefit from the RV given that for periods of time it was inoperable is unsupported.  Plaintiff provides no evidence indicating that Forest River "knew or had reason to know" that the RV would be inoperable for periods of time after its purchase.  *See* K.S.A. § 50-627(b).  And contrary to Plaintiff's argument, the fact that Forest River had a limited warranty does not support the allegation that Forest River had knowledge that an RV sold by an independent Texas dealership would not provide a material benefit due to needed repairs.

Plaintiff raises one additional unconscionability theory, contending that Forest River was subject to a federal consent order (Doc. 162-18) and a $35 million fine relating in part to its failure to notify purchasers and dealers of a safety recall involving the tire pressure monitoring system.

(Doc. 162 at 39.)  Plaintiff invokes K.S.A. § 50-653, which provides that a consent judgment or order entered by the attorney general or a district attorney serves as prima facie evidence that the defendant engaged in an act or practice in violation of the KCPA.  Even assuming the consent order is admissible and relevant, it does not support Plaintiff's unconscionability claim.  The consent order relates to a national recall notification obligation—not to the sale of, or warranty service for, Plaintiff's particular RV.  Plaintiff does not connect the consent order to any unconscionable conduct directed at her in the course of her consumer transaction.  Plaintiff also attempts to anchor certain KCPA claims on arguments and defenses made by Forest River during this litigation—including its assertion of warranty exclusions as defenses and its production of warranty documents in discovery.  (Doc. 162 at 39–40.)  This litigation conduct, however, is not evidence of unconscionable acts in connection with a consumer transaction.  The KCPA requires that the challenged conduct be "in connection with" the underlying consumer transaction.  K.S.A. § 50-627(a).  Post-sale litigation strategies, however aggressive, are not acts taken "in connection with" the sale or warranty of the RV.

For these reasons, no genuine dispute of material fact exists as to whether Forest River committed a deceptive or unconscionable act within the meaning of the KCPA.  Summary judgment is therefore granted on all of Plaintiff's KCPA claims.[11]  Because Plaintiff's request for injunctive relief under the KCPA—which appears to be seeking permanent enforcement of the limited warranty—is not an independent cause of action but stands or falls with the underlying KCPA claim, summary judgment is likewise entered against Plaintiff on her request for injunctive

---

[11] Forest River's summary judgment motion asserts that "Plaintiff's allegations and claims in Counts 20, 22, and 32 among others relate to actions allegedly taken by Forest River within this litigation."  (Doc. 143 at 23.)  The court is at a loss to identify those counts in Plaintiff's SAC.  The court presumes Forest River may be referencing a draft pretrial order that was circulated among the parties but was never entered.  (*See* Doc. 141.)  To the extent Forest River intended to reference claims in the SAC, it is directed to cite to the SAC in any future filings.  In any event, the court's analysis above identifies all of Plaintiff's claims in the SAC.

relief. *See Marksberry*, 606 F. Supp. 3d at 1084 (granting summary judgment on injunctive relief request where it "is not an independent cause of action, and it stands or falls with the KCPA claim.")

**IV.    Conclusion**

THEREFORE, Defendant's motion for summary judgment (Doc. 142) is GRANTED IN PART and DENIED IN PART.  Specifically, summary judgment is granted as to Plaintiff's breach of contract claim resting on Contract B, her tort claims for fraud, misrepresentation, and negligence, and claims brought under the KCPA.

FURTHER, the parties are ORDERED to resubmit their drafts of the pretrial order to the magistrate judge within seven (7) days after entry of this order.  In the pretrial order, Plaintiff's *only* surviving claims are her three breach of contract claims alleging breaches of Contracts A, C, and D.

FURTHER, pursuant to District of Kansas Rule 40.2(e), the jury trial location is MOVED and will now be held in Courtroom 238, Wichita, Kansas.

IT IS SO ORDERED.  Dated this 11th day of June, 2026.

 s/ John W. Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE