**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

DONNA L. HUFFMAN,

Plaintiff,

v. Case No. 23-4091-JWB

FOREST RIVER, INC.,

Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Forest River's motion for summary judgment (Doc. 184) and motion to strike (Doc. 191); and Plaintiff's cross motion for summary judgment (Doc. 190). The motions are fully briefed and ripe for decision. (Docs. 185, 186, 189, 192, 193, 194, 195.) For the reasons stated herein, Forest River's motion for summary judgment is GRANTED; Forest River's motion to strike is GRANTED; and Plaintiff's cross motion for summary judgment is DENIED as untimely.

## I. Facts and Procedural History

Donna Huffman ("Plaintiff"), proceeding pro se,[1] asserts a host of claims against Forest River, Inc. ("Forest River") stemming from the purchase of a recreational vehicle ("RV") manufactured, in part, by Forest River. This court previously entered judgment on some of Plaintiff's claims. (Doc. 170.) Accordingly, the facts set forth in this order focus on the evidence relevant to Plaintiff's remaining claims. For a more thorough recitation of the facts and procedural history of this overly protracted case, see this court's prior order. (*Id.*)

[1] As previously explained (Doc. 170 at 7), while pro se litigants are often entitled to liberal construction of their filings, Plaintiff's is not as she is a trained attorney. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *Cohen v. Hartman*, 2024 WL 4234967, at *1 (10th Cir. Sept. 19, 2024) (holding a pro se plaintiff not entitled to liberal construction because she had legal training). Even if the court construed her filings liberally, it would reach the same conclusion.

In June 2020, Forest River transferred ownership of the RV to RV Retailer of Texas, LLC, d/b/a Motor Home Specialist ("MHS"), an independent Texas dealership. (Doc. 186-3.) In July 2020, Plaintiff purchased the RV from MHS and took possession of it in Alvarado, Texas. (Doc. 183 at 2.) Forest River had no contact with Plaintiff before or during the sale. Further, Forest River's service agreement disclaims any agency relationship between it and MHS. (Doc. 144-5 at 68–76.)[2] Plaintiff's claims, thus, arise not from that sale, but from (1) a "sticker" document Forest River affixed to the RV before it reached MHS, (2) a roadside assistance benefit Plaintiff received after the sale, and (3) an oral promise made weeks later.

The first of those is the sticker. Before shipping the RV to MHS, Forest River affixed to the RV a document—which Plaintiff refers to as a "sticker"—entitled "Vehicle Description." (Doc. 186-4.) The document lists the make, model, and VIN, and a column entitled "Optional Equipment Installed By Manufacturer" that lists certain parts and features with a corresponding cost. (*Id*. at 1.) Plaintiff contends the document is a contract ("Contract A")[3] for each feature it lists and that Forest River breached it. Plaintiff does not, however, identify evidence in the record establishing that any particular part or feature listed on the sticker was missing from the RV or required repair.[4]

---

[2] The court cites Forest River's exhibit from its prior summary judgment briefing because the copy attached to the current motion is overlaid with CM/ECF docket notations from earlier filings, rendering the record citation indecipherable. The documents are otherwise identical, which is true of subsequent citations to Doc. 144-5 throughout this order. Counsel is reminded to file clean copies of exhibits so that the record remains legible.

[3] The court uses the labels "Contract A," "Contract C," and "Contract D" for convenience only. Those labels come from Plaintiff's complaint, and the court adopted and retains them here for consistency. (Docs. 53 at 10–14; 170 at 8–9; 183 at 5 n.2.) The court acknowledges that the term "contract" carries significant weight. The court's use of these shorthand labels is not a determination that any document is a contract. Those questions are taken up below.

[4] As part of Plaintiff's Contract A claim articulated in the pretrial order, she advances arguments concerning a 2019 safety recall of the RV's tire pressure monitoring system and Forest River's concealment of it. (Doc. 183 at 7.) Those contentions, however, rest on conduct not in the complaint and she has not properly sought leave to amend and add a claim. Accordingly, any claim premised on the recall is not properly before the court and will not be considered.

The second alleged agreement comes from the Forest River Class C Motorhome Owner's Manual ("Owner's Manual"), which Plaintiff received after purchasing the RV. Among other things, it describes a roadside assistance benefit ("Contract C") as a one-year membership in the SafeRide RV Motor Club. (Doc. 186-7 at 2–4.) The benefits include services such as towing, tire assistance, and dispatch of a mobile mechanic. (*Id.*) Plaintiff also received a single-page flyer that describes the same one-year benefit and the same services. (Doc. 162-25.) Plaintiff maintains that the flyer, and not the Owner's Manual, is the source of the roadside assistance agreement she sues on—a distinction that, as explained below, makes no difference because both documents describe materially identical terms. In August 2020, after the RV's motorized entry step failed, Plaintiff informed Forest River that the RV was not operational and requested that a repair technician be sent to her home. (Doc. 162-24.) Forest River responded that it could not dispatch a mobile technician and instead provided a list of verified dealers and mailed Plaintiff certain replacement parts as a goodwill gesture. (Docs. 162-24; 162-27; 162-23.) These facts form the basis for Plaintiff's breach of Contract C claim.

The final claim rests on a purported oral promise ("Contract D"). In August 2020, a safety fuse on the RV's refrigerator failed and was replaced by a mobile mechanic in Colorado at an expense to Plaintiff of $197.81. (Doc. 162-22.) Despite refrigerator appliances being excluded from coverage under Forest River's limited warranty (Doc. 162-8 at 3), representative Danielle Sodeman approved reimbursement of the expense. Forest River mailed the reimbursement check to the Corpus Christi, Texas, address Plaintiff listed on her warranty registration form. (Doc. 162-28.) Plaintiff maintains that no payment has ever been received. These allegations form the basis for Plaintiff's breach of Contract D claim.

On June 11, 2026, the court granted summary judgment in Forest River's favor on most of Plaintiff's claims but denied the motion as to the three breach of contract claims described above because Forest River had not addressed them. (Doc. 170 at 22.) On August 3, the magistrate judge entered the pretrial order. (Doc. 183.) In it, Forest River was granted leave to file a second summary judgment motion. (*Id*. at 25–26.) Plaintiff appears to have attempted to lodge objections verbally during the conference held before the pretrial order was entered, arguing that no rule or rationale supported a second motion as there has been no subsequent discovery, and no showing of good cause to extend Forest River's summary judgment deadline. (*Id*. at 25 n.4.) The magistrate judge noted that "technical difficult[ies] cut" Plaintiff's objections short but nevertheless granted Forest River leave to file a second motion for summary judgment by August 6. (*Id*. at 25–26.) Additionally, in the pretrial order, Plaintiff sought to include new claims and/or amend existing ones. (*Id*. at 18 n.3.) However, the magistrate judge disallowed this, noting that "many of the statutes cited by Plaintiff do not appear in her operative pleading, and her descriptions of her remaining claims are either confusing or inconsistent with both her" complaint and this court's prior order. (*Id*. at 18, 20.) Plaintiff's objections to Forest River being granted leave to file a second summary judgment motion and her attempts to add new claims or amend existing ones will be addressed more thoroughly below.

As for damages on her remaining claims, Plaintiff seeks $237,613.66 on Contract A, including $15,000 for damage to her garage floor, $16,406.66 in loss-of-use damages, $156,207.00 to replace the RV, and $50,000 in consequential damages. For Contract C, she seeks $395.62 for refrigerator fuse repairs and cushions. For Contract D, she seeks $16,995.15, consisting of the same $16,406.66 in loss-of-use damages. She also seeks litigation costs, interest, and fees. (Doc. 183 at 22–23.)

## II. Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) (quoting *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015)). Conclusory allegations are not sufficient to create a dispute as to an issue of material fact. *See Hall*, 935 F.2d at 1110. The court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

In considering a motion for summary judgment, the facts set forth in the motion must refer "with particularity to those portions of the record upon which" the moving party relies. D. Kan. R. 56.1(a). "All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." *Id*. To properly dispute a proposed statement of material fact, the opposing party must "refer with particularity to those portions of the record upon which the opposing party relies." D. Kan. R. 56.1(b)(1). Failure to properly controvert a proposed fact that is properly supported will result in a determination that the fact is admitted. *Coleman v. Blue Cross Blue Shield of Kansas, Inc.*, 287 F. App'x 631, 635 (10th Cir. 2008).

## III. Analysis

Plaintiff's three alleged contract breaches rest on the following "agreements": (1) a "sticker" document Forest River affixed to the RV before it reached MHS, (2) a roadside assistance benefit described in the Owner's Manual Plaintiff received after the sale, and (3) an oral promise by a Forest River representative to cover certain expenses Plaintiff incurred. Forest River moves for summary judgment on those claims. Before turning to them, however, the court addresses Plaintiff's objections to the pretrial order and her cross-motion for summary judgment.

### A. Plaintiff's Objections and Cross-Motion for Summary Judgment

The court has had significant difficulties during this litigation with Plaintiff articulating her claims, despite the magistrate judge's best efforts. On August 3, 2026, the magistrate judge entered the pretrial order with a description of Plaintiff's three remaining claims as three separate breaches of contract. (Doc. 183 at 17–18.) Plaintiff sought to include in the pretrial order additional claims that were beyond the scope of her complaint. (Doc. 183 at 18–20 n.3.) The magistrate judge did not include them because "many of the statutes cited by Plaintiff do not appear in her operative pleading, and her descriptions of her remaining claims are either confusing or inconsistent with both her" complaint and this court's prior order (Doc. 170). (Doc. 183 at 18, 20.) For example, Plaintiff's descriptions invoke statutory theories—such as the Kansas Uniform Commercial Code and K.S.A. § 75-1221—that appear nowhere in her complaint and attempt to reframe the sticker and roadside assistance allegations as warranty claims this court has already resolved. (Doc. 170 at 8–13, 22.) Other descriptions seem to combine several theories, leaving the court and Forest River to guess which facts are meant to support which claim. To wit, her complaint pleads Contract A as a single claim: that Forest River "made a contract for features included in the sticker price posted on the vehicle." (Doc. 53 ¶¶ 39, 45.) In the pretrial order, Plaintiff tries to parlay that

single claim into four distinct claims. Count 1(a) frames the sticker claim as one for non-conforming goods under K.S.A. §§ 84-2-313(1)(a)–(b) and 84-2-314(2)(a) and adds a claim for "breach of the RIVA sticker." Count 1(b) adds a claim for breach of an implied contract and the duty of good faith and fair dealing under three further subsections of K.S.A. § 84-2-314. Count 1(c) adds a claim for breach of an implied contract under K.S.A. § 75-1221(a). Finally, Count 1(d) adds a claim under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, premised on Forest River's failure to complete warranty repairs. None of those statutes appear in her complaint, and many of them were pleaded as part of her already dismissed warranty claim. The descriptions of the other two claims are no more consistent.

Having reviewed the complaint and pretrial order, the court agrees with the magistrate judge that Plaintiff's description of her claims are materially different than those in her complaint. (*Compare* Doc. 183 at 18–20 n.3 *with* Doc. 53 at 10–11, 13–14.) Therefore, the court agrees that Plaintiff has not shown good cause to amend her claims at this stage of the proceeding. Further, although Plaintiff objected to the magistrate judge's exclusion of her additional claims in the pretrial order, she did not file an objection. Rather, she noted in her response brief that she "objected" to the exclusion of her claims, without making any effort to articulate the applicable standard. (Doc. 189 at 16.) This is not sufficient under Rule 72(a). Plaintiff had 14 days to file any objections to the pretrial order. Fed. R. Civ. P. 72(a). She did not, so her objections "are waived." *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002).

Even construing Plaintiff's attempt to add new claims as her seeking leave to amend, such a request would be denied. "Because the pretrial order is the controlling document at trial, a plaintiff's attempt to add a new claim to the pretrial order [is] the equivalent of asking leave to amend [her] complaint and must be evaluated by the court under the standards set forth in [Federal]

Rule [of Civil Procedure] 15(a)." *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006) (internal quotations omitted). Plaintiff cannot satisfy the timing requirements under Rule 15(a). Thus, the court looks to the good cause standards under Rule 16(b)(4). *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). Rule 16(b)(4) requires the moving party to show the filing deadlines cannot be met despite the movant's "diligent efforts." *Husky Ventures, Inc. v. B55 Investments, Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018). Notably, untimeliness is an appropriate ground for denying amendment. *Id.*; *Ross v. Pentair Flow Techs., Inc.*, No. 19-2690-SAC, 2021 WL 4134317, at *2–3 (D. Kan. Sept. 10, 2021). Here, Plaintiff has already amended her complaint twice, and the case is here on a motion for summary judgment. To permit Plaintiff to add new claims at this late juncture would be inconsistent with the orderly and efficient resolution of this case. Moreover, amendment would unfairly prejudice Forest River because the statutes cited by Plaintiff do not appear in her complaint. Her claims would involve different elements and additional discovery. The court declines Plaintiff's invitation to extend this litigation further. The court finds nothing of record that would support good cause for Plaintiff to wait until now to add these claims. Accordingly, even construing Plaintiff's attempt to add new claims to the pretrial order as her seeking leave to amend, the court denies that request.

Next, Plaintiff filed a cross motion for summary judgment as part of her response to Forest River's motion for summary judgment. (Doc. 190 at 1, 7–8, 17–18.) The pretrial order, however, did not grant Plaintiff leave to file a motion for summary judgment. (Doc. 141.) In response, Forest River filed a motion requesting the court strike or deny as untimely Plaintiff's cross motion. (Docs. 191, 192.) Forest River argues that the dispositive motion deadline was January 30, 2026 (Doc. 141), which Plaintiff's filing exceeds by over 200 days. The court agrees. Plaintiff did not seek leave to file the motion out of time, nor has she shown good cause for the untimeliness.

Accordingly, Forest River's motion to strike is granted to the extent it seeks denial of the cross motion, and Plaintiff's cross motion for summary judgment is denied as untimely.

Finally, Plaintiff objects to Forest River getting a "second bite at the apple"—which the court construes as Forest River being granted leave to file this second summary judgment motion. (Docs. 183 at 25 n.4; 189 at 1, 16–18.) As with her objections to her excluded claims, she filed no objections to the pretrial order within 14 days nor made any effort to articulate the applicable standard. This is insufficient under Rule 72(a). *See* Fed. R. Civ. P. 72(a). Moreover, Forest River was given an opportunity to file a second motion for summary judgment because the undersigned's review of the case in ruling on the first motion for summary judgment indicated that the remaining contract claims were tenuous at best. It would be a gross waste of limited judicial resources to fritter away a week trying a case on claims as weak as these claims appeared. Accordingly, the undersigned directed the magistrate judge to give Forest River an opportunity to resolve the remaining claims on paper. The court was fully prepared to deny that motion if, contrary to the impression left by the record when the court ruled on the earlier claims, it became clear that there was merit to any of the contract claims; but judges should not be required to waste time on unnecessary trials over worthless claims. Therefore, the court will now turn to Plaintiff's remaining three claims.

**B. Contract A**

Plaintiff's breach of Contract A claim concerns the sticker placed on the RV by Forest River. Forest River's lead argument is that the sticker is not a contract at all. It contends that the document Plaintiff called a "sticker contract" (Doc. 186-4) is the disclosure label that federal law requires a manufacturer to affix to a new automobile before delivery to a dealer, known as a "Monroney sticker." (Doc. 185 at 3.) Forest River further contends that the label's function is to

disclose price information, not to promise the performance of any listed feature. (*Id*. at 5.) Forest River argues that the statutory scheme requiring the label affords consumers no private right of action, and that Plaintiff may not create one by claiming the label is a contract. The court agrees.

The Automobile Information Disclosure Act ("AIDA") typically requires a Monroney sticker be placed on a new vehicle's door window that discloses "the manufacturer's suggested retail price and other consumer information." 49 C.F.R. § 575.401(c)(4); *see* 15 U.S.C. § 1232(f) (listing the consumer information the Monroney sticker must disclose). Notably, the Monroney Act does not allow for damages or a private right of action. 15 U.S.C. § 1231, *et seq*.; *Reiff v. Don Rosen Cadillac-BMW, Inc.*, 501 F. Supp. 77, 79 (E.D. Pa. 1980) ("[The Monroney Act] provides only for criminal penalties against its violators. [Plaintiff] has cited no case in which a private civil suit has been maintained under th[e] Act, and he offers no reason why a private right of action should be implied. Thus, the claim . . . will not stand."); *McGuff v. Volkswagen Grp. of Am., Inc.*, No. 16-00462-CV-S-SRB, 2016 WL 11514191, at *3 (W.D. Mo. June 13, 2016); *Lindsey v. Ford Motor Co.*, 271 So. 3d 757, 763 (Miss. Ct. App. 2018) ("While a manufacturer can be fined for failure to comply with [the Monroney Act, it] does not create a private right of action.").

Plaintiff does not meaningfully respond to this argument. She does not dispute that the document Forest River affixed to the RV is the label federal law required it to place there, and she identifies no authority permitting a consumer to sue on that label. Here, the sticker affixed to the RV is no contract at all but rather a federally mandated disclosure indicating the manufacturer's suggested retail prices for certain features. A document that federal law compels a manufacturer to create and affix to a vehicle is not a contract. The formation of a contract requires an offer, an acceptance, and consideration. *M West, Inc. v. Oak Park Mall, L.L.C.*, 44 Kan. App. 2d 35, 45–46 (2010). A Monroney sticker satisfies none of those requirements. Plaintiff did not accept

anything from Forest River by purchasing the RV; she bought it from MHS, an independent dealership, and she paid MHS. The court has located no case—and Plaintiff cites none—holding that a statutorily required disclosure label affixed to a vehicle is a contract between the manufacturer and an eventual purchaser. In short, the only document Plaintiff identifies as Contract A cannot support a breach of contract claim, and the only law governing that document affords her no remedy.

But instead of responding to any of these arguments, Plaintiff attempts to recast her claim as one arising under the Kansas UCC, invoking for the first time K.S.A. § 84-2-313(1)(a) (breach of express warranty) and K.S.A. § 84-2-314(2)(a) (breach of implied warranty of merchantability). (Doc. 189 at 9–11, 17.) The court declines to entertain Plaintiff's reframing. None of those UCC statutes appear in her complaint, which pleads Contract A as precisely what its label suggests: a contract. (Doc. 53 ¶¶ 39, 45.) The court has already declined to permit Plaintiff to add new claims by way of the pretrial order, and a response brief is no more proper a vehicle. Plaintiff's description of her Contract A claim in her response is inconsistent with her complaint, and the court will not construe her sticker claim as something other than what she pled it to be.[5] To the extent Plaintiff claims violations under the UCC, those claims are not in the case as they are materially different than those in her complaint and, in any event, she did not properly seek leave to amend and add them. Accordingly, Plaintiff's claim rests on a document that federal law required Forest River to affix to the RV and that affords consumers no private right of action. Moreover, her response fails to meaningfully address any argument raised by Forest River.

[5] Plaintiff's attempt to reframe her Contract A claim under the UCC appears designed to circumvent the court's prior ruling. (Doc. 189 at 12–15.) By incorporating her prior summary judgment response, she points again to the collection of alleged defects raised there (Doc. 162) and argues that Forest River was obligated to diagnose and repair them. But that obligation is the substance of the warranty claim the court dismissed (Doc. 170), and she identifies no term on the sticker addressing the repair of any component. Plaintiff may not evade an adverse ruling by relabeling her claim.

That leaves the portion of Plaintiff's Contract A claim that contends the RV is a 2018 model that Forest River instead marketed as a 2020. Although Plaintiff pleads this theory as part of her Contract A claim, the court fails to see how this is a breach of contract claim at all. Rather, the claim sounds in fraud, and any such claim has already been dismissed. (Doc. 170 at 22.) In any event, the claim is again meritless, and court will briefly address it to the extent it was not covered by the court's prior order. Plaintiff's claim rests on the certificates of origin issued at different stages of the RV's manufacture and on how Forest River purportedly marketed the RV elsewhere. The court's conclusion that the sticker is not a contract therefore does not fully answer this theory, and the court addresses it separately out of an abundance of caution. The RV was manufactured in stages. Mercedes-Benz manufactured the chassis and issued a certificate of origin reflecting its completion. (Doc. 186-3 at 1.) Then Forest River completed the finished vehicle as the second-stage manufacturer and issued its own certificate of origin reflecting a 2020 model year. (*Id*. at 3.) Moreover, the sales agreement Plaintiff signed upon purchasing the RV advised that "[o]n occasion [the] Chassis and RV Body are assembled separately and may have different model years." (Doc. 186-6.)

Plaintiff's response glosses over this disclosure. She does not dispute that she received both certificates of origin and the sales agreement she signed informed her that the chassis and body may carry different model years. The only ascertainable argument is that a Mercedes sticker should have been affixed to the RV to disclose the chassis year. (Doc. 189 at 11–12.) Plaintiff points to no authority on this point. And in conclusory fashion, Plaintiff argues that the year was not properly disclosed because this RV does not match Forest River's "standard features for a 2020 Isata 3." (*Id*. at 12.) But she never identifies what those "standard features" are, where they appear

in the record, or which of them this RV lacks. Conclusory assertions of that kind do not create a genuine dispute of material fact. *Hall*, 935 F.2d at 1110.

More fundamentally, a certificate of origin is a title document, not a contract, and pointing to one establishes no offer, no acceptance, and no consideration. To the extent Plaintiff alleges that Forest River concealed the chassis year or engaged in deceptive practices, those allegations sound in fraud, and the court already dismissed her claims under the Kansas Consumer Protection Act ("KCPA"). (Doc. 170 at 16–22.) She may not resurrect them under a contract label. Accordingly, Forest River is entitled to summary judgment on Plaintiff's Contract A claim.[6]

**C. Contract C**

The roadside assistance benefit Plaintiff labels Contract C originates in the Owner's Manual she received with the RV. (Doc. 186-7.) The manual advises that Plaintiff is:

> [A]utomatically registered with an emergency roadside assistance service – free for one year from date of purchase. We've teamed up with [SafeRide RV Motor Club,] . . . to give you immediate access to fast, dependable service when and where you need it. This is a comprehensive emergency roadside service that is available to you 24/7, around the clock.

(*Id*. at 2.) The manual goes on to list the covered services, among them a mobile mechanic, but explains that "[c]ustomers are responsible for all charges related to on-site repairs, including but not limited to parts and labor costs." (*Id*. at 3.) Plaintiff, however, maintains that this is not the document she sued on. She identifies a single-page flyer stating that "Emergency Roadside Assistance is applicable when you are traveling with your RV" and that it is "[e]ffective for one year from date of purchase." (Doc. 162-25.)[7] It then describes the same services in nearly identical

---

[6] Plaintiff attempts to assert a claim alleging "breach of the RIVA [*sic*] sticker." (Doc. 189 at 9.) The court understands her to refer to the seal of the RV Industry Association ("RVIA"), which may be displayed on RVs that meet certain industry safety standards. Plaintiff has never asserted a cognizable claim premised on the RVIA seal and as already discussed, she may not add such a claim now.

[7] Plaintiff faults Forest River for ignoring a "universe" of documents supporting her Contract C claim but directs it only to "previous Ex 41." (Doc. 189 at 14.) The court understands that to mean exhibit 41 to her response to Forest

words as in the Owner's Manual and states that "[c]ustomers are responsible for all charges related to on-site repairs, including but not limited to parts and labor costs." (*Id.*)

As best the court can tell, Plaintiff's claim boils down to her belief that this language forms a contract. Plaintiff believes that contract was breached when, after requesting dispatch of a mobile mechanic to her home, Forest River instead responded that it could not dispatch a technician to that location and provided a list of verified local dealers. (Doc. 162-24.) As such, she argues a question of fact exists as to the reasonableness of Forest River's response. (Doc. 189 at 3, 14.)

Forest River argues there is no signed document setting forth the terms of an enforceable contract nor is there privity between Plaintiff and Forest River. It contends that what the Owner's Manual describes is the availability of a one-year membership in the SafeRide RV Motor Club, whose performance Forest River never guaranteed, and that its undertaking extended no further than making that membership available. (Doc. 185 at 10–11, 13.) In its reply, it adds that the competing versions make no difference: whichever one Plaintiff relies on, she identifies no contractual obligation running from Forest River, much less one it breached. (Doc. 193 at 7–8.)

Having reviewed both documents and viewing the evidence in the light most favorable to Plaintiff, the court agrees with Forest River that the parties' dispute over which controls is immaterial, because neither is a contract. In Kansas, and probably everywhere else, the requirements to form a valid contract are: (1) offer; (2) acceptance; and (3) consideration. *M West*, 44 Kan. App. 2d at 45–46. Consideration must be bargained for and given in exchange for the asserted promise. *James Colborn Revocable Trust v. Hummon Corp.*, 55 Kan. App. 2d 120, 124 (2017). When the relevant facts are undisputed, whether they establish a contract presents a question of law. *Unified Sch. Dist. No. 446 v. Sandoval*, 295 Kan. 278, 282 (2012).

---

River's first summary judgment motion (Doc. 162-25), because there is no exhibit 41 attached to her current response. (*See* Doc. 170 at 1 n.2.)

Here, neither document manifests an agreement under which Forest River undertook a contractual duty. Both are informational descriptions of a benefit that comes with the RV, and neither asked anything of Plaintiff. The Owner's Manual tells Plaintiff she was "automatically registered" with SafeRide RV Motor Club upon taking delivery of the RV. (Doc. 186-7.) The flyer she identifies similarly describes the service as "[c]omplimentary." (Doc. 162-25.) Neither identifies the parties to an agreement, sets out terms of exchange, fixes any obligation on Plaintiff's part, or bears a signature. A benefit that is free, automatic, and requires no act or forbearance from the recipient supplies no consideration and cannot form a contract. *Hummon Corp.*, 55 Kan. App. 2d at 124; *Ashley Clinic, LLC v. Coates*, 64 Kan. App. 2d 53, 60 (2024). Without an offer inviting acceptance or consideration, there is no contract to breach, and no genuine dispute of material fact remains for trial.

Further, Plaintiff's claim is foreclosed because no privity exists between her and Forest River. *See Land v. Midwest Off. Tech., Inc.*, 979 F. Supp. 1344, 1349 (D. Kan. 1997) ("Lack of privity bars breach of contract claims."). Plaintiff purchased the RV from MHS, an independent dealership; Forest River had no contact with Plaintiff before or during the sale; and Forest River's dealer service agreement with MHS disclaims any agency relationship between them. (Docs. 183 at 2–3; 144-5 at 68.) Plaintiff does not specifically controvert these facts, and they are therefore deemed admitted for purposes of summary judgment. D. Kan. R. 56.1(a).

Finally, both documents limit roadside assistance to "mechanically disabling events" and leave the customer responsible for all on-site parts and labor costs. The motorized entry step failure Plaintiff describes may have been the triggering event, but her Contract C damages seek $395.62 for "[r]efrigerator fuse repairs and cushions," charges she fails to link to a breach of any

roadside assistance obligation by Forest River. (Doc. 183 at 23.) Accordingly, Forest River is entitled to summary judgment on Plaintiff's Contract C claim.

**D. Contract D**

Plaintiff's Contract D claim is narrow. She contends that in August 2020, after a mobile mechanic in Estes Park, Colorado, replaced a fuse on the RV's refrigerator, Danielle Sodeman—a Forest River representative—approved reimbursement for the repair, but Forest River never paid. (Doc. 183 at 8.) Plaintiff goes on to say, however, that Forest River eventually mailed the reimbursement check to an old Texas address; therefore she never received it. (*Id.*) She contends that Forest River never reissued the check and thereby breached the oral agreement to reimburse.

Forest River argues that the alleged oral promise to reimburse the refrigerator fuse repair fails for lack of consideration because the limited warranty (Doc. 144-5 at 5) excludes appliances such as refrigerators. (Doc. 185 at 11–14.) Therefore, Forest River contends that Ms. Sodeman's alleged statement was at most a gratuitous accommodation, and that Plaintiff identifies no bargained-for return promise or detriment given in exchange, rendering it unenforceable under Kansas law. In any event, Forest River contends it followed through on its gratuitous offer by mailing the reimbursement check to the address Plaintiff supplied on her warranty registration.

Plaintiff maintains that Ms. Sodeman's approval of reimbursement, standing alone, created an enforceable contract. (Doc. 189 at 5, 7–8.) However, Plaintiff provides no evidence indicating what that oral statement was, when it was made, or any specifics allowing this court to meaningfully assess it. Further, Plaintiff ignores Forest River's dispositive argument: the limited warranty excludes the refrigerator as an appliance and therefore did not obligate Forest River to pay for replacement of the refrigerator fuse, making Ms. Sodeman's offer to reimburse Plaintiff a gratuitous accommodation. (Doc. 185 at 11–12.)

A promise that imposes no legal obligation on the promisor does not supply consideration. *Berryman v. Kmoch*, 221 Kan. 304, 309 (1977) ("To be sufficient consideration, a promise must impose a legal obligation on the promisor."). Accordingly, a gratuitous promise unsupported by a bargained-for exchange is not enforceable. *Hampton v. Dillard Dep't Stores, Inc.*, 18 F. Supp. 2d 1256, 1263 (D. Kan. 1998), *aff'd*, 247 F.3d 1091 (10th Cir. 2001); *Feaster Trucking Service, Inc. v. Parks--Davis Auctioneers, Inc.*, 211 Kan. 78, 79 (1973) ("[A]ny separate gratuitous promise to furnish [ ] services would be without consideration and unenforceable as a contract.").

Here, the limited warranty excludes appliances which includes the refrigerator fuse (Doc. 162-8 at 3 ("Warrantor makes no warranty with regard to . . . appliances")), so Forest River owed Plaintiff nothing for the fuse repair. Accordingly, an offer to pay an expense one has no duty to pay is a gratuitous accommodation, not a contract. Plaintiff gave up nothing in exchange for the promise and undertook no obligation she did not already owe. She identifies no return promise, no forbearance, and no detriment that Forest River sought in exchange. Consideration is an essential element of a contract, and a party cannot create one by pointing to a promise she neither paid for nor gave anything to obtain. *M West*, 44 Kan. App. 2d at 45–46. Plaintiff's theory effectively boils down to her allegation that Forest River voluntarily agreed to reimburse a repair. Because Plaintiff has identified no evidence of consideration, nor even attempted to respond to Forest River's arguments regarding the same, her Contract D claim fails as a matter of law.

Whether Forest River later mailed a check, whether Plaintiff received it, and whether Forest River produced a cancelled check do not alter that conclusion. Those matters concern whether Forest River completed the gratuitous offer; they do not establish the consideration or mutually agreed terms necessary to create an enforceable contract. Because Plaintiff has not identified

evidence from which a rational jury could find an enforceable agreement, Forest River is entitled to summary judgment on Contract D.

## IV. Conclusion

Based on the foregoing, Forest River's motion for summary judgment (Doc. 184) is GRANTED; Plaintiff's cross motion for summary judgment (Doc. 190) is DENIED as untimely; and Forest River's motion to strike Plaintiff's cross motion for summary judgment (Doc. 191) is GRANTED. This case is closed.

IT IS SO ORDERED. Dated this 7th day of October 2026.

__s/ John Broomes________________
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE